### George P. Metcalf & another *vs.* First Parish in Framingham & others.

Middlesex. Jan. 13, 1879. — Feb. 26, 1880. Colt & Soule, JJ., absent.

A testator, owning a large number of shares of stock in a certain railroad company, bequeathed to several persons shares of stock in that company, amounting in the aggregate to a less number than he owned at the time of making his will and at his death; and to some of these persons he also gave pecuniary legacies. To one person he directed that a legacy should be paid in the bonds of another railroad corporation at par, if he should possess them at his death. The will concluded with a residuary devise and bequest of "all the rest, residue and remainder of my estate" to his nephews and nieces, with a like direction for the payment in railroad bonds of the portions of the children of a brother; and a clause empowering his executors to sell all real estate and personal property, "excepting what I have hereinbefore disposed of." *Held,* that the bequests of the shares of stock were specific.

Where the reading of a whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court will supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared.

A testator bequeathed personal property in trust for the benefit of his wife's sister and her husband during their lives, as follows: During her life, to pay the net income to her semiannually; in case she should die before him, to transfer one half of the principal to a charitable institution, and to pay the income of the remainder to him during his life; in case he should die before her, then at her death to transfer the whole of the principal to the same institution. She died

before her husband, and one half of the principal was paid to the institution and the other half kept in trust for him. *Held,* that on his death the institution was entitled to this part of the principal also, and that it did not pass to the residuary devisees; although a similar bequest for the benefit of another husband and wife contained an express direction for a transfer of the second half of the principal to the charitable institution upon the death of the survivor.

BILL IN EQUITY by the executors of the will of George Phipps, to obtain the instructions of the court. Hearing before *Endicott,* J., who reserved the case for the determination of the full court, in whose opinion it is stated.

*F. V. Balch,* for the charitable institutions, cited, upon the first question presented, *White* v. *Winchester,* 6 Pick. 48; *Foote, appellant,* 22 Pick. 299; *Cuthbert* v. *Cuthbert,* 3 Yeates, 486; *Wallace* v. *Wallace,* 3 Foster, 149; *Cogswell* v. *Cogswell,* 2 Edw. Ch. 231; *Ashton* v. *Ashton,* Cas. temp. Talbot, 152; *Partridge* v. *Partridge,* Cas. temp. Talbot, 226; *Chester* v. *Urwick,* 23 Beav. 402; *Jacques* v. *Chambers,* 2 Collyer, 435; *Mullins* v. *Smith,* 1 Dr. & Sm. 204; *Miller* v. *Little,* 2 Beav. 259; *Bethune* v. *Kennedy,* 1 Myl. & Cr. 114; *Page* v. *Young,* L. R. 19 Eq. 501; *Kermode* v. *Macdonald,* L. R. 3 Ch. 584.

*E. R. Hoar,* for the residuary devisees, upon the same question, cited also *Stickney* v. *Davis,* 16 Pick. 19; *Robinson* v. *Addison,* 2 Beav. 515; *Tifft* v. *Porter,* 4 Selden, 516; *Hayes* v. *Hayes,* 1 Keen, 97; *Measure* v. *Carleton,* 30 Beav. 538; *Partridge* v. *Partridge,* 1 Atk. 417, note; *Sibley* v. *Perry,* 7 Ves. 522; *Webster* v. *Hale,* 8 Ves. 410; *Simmons* v. *Vallance,* 4 Bro. C. C. 345; *Bronsdon* v. *Winter,* Amb. 57; 2 White & Tudor's Lead. Cas. in Eq. (5th ed.) 243, notes to *Ashburner* v. *Macguire;* *Hinton* v. *Pinke,* 1 P. Wms. 540, note.

GRAY, C. J. The testator by the first article of his will bequeaths to the First Parish in Framingham "fifty shares of the stock of the Pittsburg, Fort Wayne and Chicago Railroad Company," and also "the further sum of five thousand dollars." By the second article he bequeaths to the town of Framingham the sum of five hundred dollars and fifty shares of the stock of the same corporation. By the third article he bequeaths fifty shares of the same stock to the Association for the Relief of Aged and Indigent Females, and by the fourth article a like number of such shares to the Home for Aged Men, each of which is a corporation established in Boston. Then follow other bequests, six

of which are of various amounts of stock in the same corpora-tion, and the rest are pecuniary legacies, as to one of which, to his brother Gardiner, the testator directs that it shall be paid to the legatee in Dayton and Michigan Railroad bonds at par, "provided I should be in possession of the same at the time of my decease." The will concludes with a residuary devise and bequest of "all the rest, residue and remainder of my property of every kind, real, personal and mixed," to and for the benefit of his nephews and nieces, with a like direction for the payment in railroad bonds of the portions of the children of his brother Gardiner; and a clause empowering his executors to sell and convey all real estate and personal property, "excepting what I have hereinbefore disposed of." The bequests of stock in the Pittsburg, Fort Wayne and Chicago Railroad Company collectively include six hundred and ten shares; and it is agreed that the testator at the date of his will, and also at the time of his death, owned one thousand and ninety shares thereof.

The first question presented by the bill is whether the bequests of shares in the stock of the Pittsburg, Fort Wayne and Chicago Railroad Company are specific or general. This depends on the apparent intent of the testator. We are unanimously of opinion that his intention that these bequests should be specific clearly appears upon a view of the whole will, and especially from the following considerations: 1st. He not only makes many bequests of stock in this corporation and many pecuniary legacies to different persons and institutions, but in the first and in the second items of the will he makes to the same legatees bequests both of stock and of money, a fact much relied on by Lord Chancellor Cairns in *Kermode* v. *Macdonald*, L. R. 3 Ch. 584, as showing that a legacy of a sum invested in stock was specific. 2d. He expressly makes the general legacies to Gardiner and his children payable in certain railroad bonds, if owned by the testator at the time of his death, and makes no such direction as to the legacies of the stock in question. 3d. In the clause empowering the executors to sell, the exception of "what I have hereinbefore disposed of" evidently refers to his numerous legacies of this stock, and not merely to the bonds mentioned only in the bequests to Gardiner and his children.

The testator's intention to bequeath specifically shares which he owned appears to us to be much clearer than in *White* v. *Winchester*, 6 Pick. 48, in which the mere fact of the testator's owning stock exactly equal in amount to that bequeathed was held by this court, in a judgment delivered by Mr. Justice Wilde, after full consideration of the early English cases, to raise a strong presumption that the testator intended to give the stock of which he was the owner; and quite as plain as if the testator, in speaking of the shares bequeathed, had used the word "my," which is generally admitted to be sufficient to make a bequest specific. 2 Wms. Ex'ors. (6th Am. ed.) 1255. Upon a careful examination of the numerous and not always consistent cases cited at the bar, they do not appear to us to afford sufficient ground for a different conclusion.

The other question in the case arises under the tenth article of the will, which is as follows : " I give and bequeath unto George P. Metcalf, in trust and confidence however, one hundred shares of the stock of the Pittsburg, Fort Wayne and Chicago Railroad Company, for the benefit of Nancy Green, sister of my deceased wife, and William Green, husband of said Nancy, for and during their natural lives, as follows : First, during the life of said Nancy, the net income of the same shall be paid over semiannually to said Nancy. In case said Nancy should die before said William, then at the decease of said Nancy said trustee shall transfer one half of said stock in equal parts to said Association and said Home. The income of the remainder shall be paid to said William as aforesaid during his natural life. Second. In case the said William should die before said Nancy, then at the decease of said Nancy the whole of said stock shall be transferred in equal shares to said Association and said Home, and said trust estate shall cease."

The eleventh article contains another bequest in similar form in all respects, except in putting the testator's brother Charles Phipps in place of Nancy Green and his wife Sophronia Phipps in place of William Green; inserting after the words " her natural life " this clause : " and at her decease the remainder of said trust estate shall be transferred to said Association and said Home as aforesaid; " and adding at the end of the whole bequest the following: " By said Association and said Home, as

mentioned in items 10 and 11, I mean and intend the Association for the Relief of Aged and Indigent Females named in item and the Home for Aged Men mentioned in items 3 and 4."

Nancy Green having died before her husband, and half the stock mentioned in the tenth article having been thereupon transferred to the two charitable institutions, the question is whether, upon the subsequent death of her husband, the remaining half of this stock is likewise to be transferred to the charities, or falls into the residue of the testator's estate.

The decision of this question doubtless depends upon the intention of the testator, as manifested by the words that he has used, and an omission to express his intention cannot be supplied by conjecture. But if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared. *Ferson* v. *Dodge*, 23 Pick. 287. *Towns* v. *Wentworth*, 11 Moore P. C. 526. *Abbott* v. *Middleton*, 7 H. L. Cas. 68. *Greenwood* v. *Greenwood*, 5 Ch. D. 954.

In *Weston* v. *Weston*, 125 Mass. 268, for instance, the testator gave the residue of his estate to trustees, and directed them, out of the income, to support his wife during her life, and to pay annuities to his two children; and upon the death of the wife to transfer the principal to the children in equal shares, if they both survived her, and, if either of them died in her lifetime without issue, to transfer the principal to the survivor; and made no specific provision for the case of a child dying in the lifetime of the wife, leaving issue. But it was held that the title in half the principal vested in each child immediately, and upon its death leaving issue went to its representatives, and not to the testator's next of kin.

In a case decided by the House of Lords upon the advice of Lord Eldon and Lord Redesdale, which is not contained in the regular reports, but of which we have full statements by Lord St. Leonards, who was of counsel in the case, a devise, which mentioned estates in one county only, was held by implication from other provisions in the will to include distinct estates in

another county.   *Newburgh* v. *Newburgh*, Sugden's Law of Prop·
erty, 367–369; *S. C.* cited 7 H. L. Cas. 108, 109.

In *Sweeting* v. *Prideaux*, 2 Ch. D. 413, a testator devised
£16,000 in trust to invest the same, and to pay the income of
£8000, part thereof, to his daughter Ann for life on her separate
receipt and not subject to the control or debts of her husband,
and after her death to divide the £8000 among her children at
twenty-one years of age; and directed his trustees to pay the
income of the remaining £8000 to his daughter Sarah for life in
the same manner in every respect and subject to the same con-
trol as he had directed as to his daughter Ann, it being his in-
tention that his said daughters' fortunes should not be subject to
the control or debts of their husbands; but made no further pro-
vision as to any division of capital among the children of Sarah.
He then gave to the same trustees a sum of £6000 to invest and
pay the income to his son for life, and to divide the principal
among the son's children, and gave the trustees power to apply
the income of both funds for the maintenance and education of
the daughters' and son's children.   Vice-Chancellor Hall held
that upon the death of Sarah her children were entitled by im-
plication to the sum of £8000, and no appeal appears to have
been taken from his decision.

It is well settled in England that a devise or bequest to a
widow for life, if she shall not marry, and, if she shall marry,
then over to another person, gives the remainder to him if she
dies unmarried. *Luxford* v. *Cheeke*, 3 Lev. 125. *Gordon* v. *Adol-
phus*, 3 Bro. P. C. (2d ed.) 306.   *Eaton* v. *Hewitt*, 2 Dr. & Sm.
184.   *Browne* v. *Hammond*, H. R. V. Johns. 210.   *Underhill* v.
*Roden*, 2 Ch. D. 494.   In such cases, a general intent is implied
to give the remainder over after the death of the tenant for
life; and the event of her marrying again is treated as merely
qualifying or cutting down her life estate, and not as prescribing
the contingency upon which the remainder is to take effect.

The tenth article of the will before us begins by bequeathing
the stock therein named in trust for the benefit of the testator's
wife's sister, Nancy Green, and her husband, during their natural
lives; and ends by providing that, if the husband shall die be-
fore the wife, then at her death the whole of the stock shall be
transferred to the two charitable institutions in equal shares and

the trust estate shall cease. The testator thus clearly manifests his intention to be twofold : to create a trust for the benefit of Nancy and her husband during their lives; and, subject to their equitable life estates, to give the legal title in remainder to the charities. The provision for Nancy is evidently more prominent in his mind than the provision for her husband; for he expressly directs that, so long as she lives, the whole income shall be paid to her, — so that her husband, during her life, will take nothing but what she may choose to give him. When the testator's primary object of providing for her has been accomplished, he directs, in the most explicit and formal terms, that, if the husband is no longer living, the whole principal shall go to the charities. The intermediate provision for the case of the wife dying before the husband, by which the testator directs that in that event half of the principal shall be at once transferred to the charities and the income of the other half paid to the husband during his life, does not appear to us to have been intended to impair in any degree either of the two chief purposes of the testator — the gift of the whole income to the wife during her life, and the ultimate gift of the whole principal to the charities ; but only to make a provision for the husband during his life, if he happens to survive the wife, out of one half of the income, and thereby to postpone the enjoyment by the charities of the principal of that half.

This may perhaps be made more clear by transposing the provisions of this article of the will. If the testator, immediately after providing that, during the life of Nancy, the net income should be paid to her, had inserted the clause which provides that, if her husband shall die before her, then at her death the whole of the stock shall be transferred to the charities and the trust estate shall cease, and had followed this by the provision that, if she shall die before her husband, then at her death one half of the principal shall be transferred to the charities and the income of the other half be paid to the husband during his life, it could hardly have been doubted that the whole effect of this provision was merely to postpone the transfer of the principal and the termination of the trust, so far as regarded one half of the fund, until the death of the husband. And it is familiar law that the grammatical construction, or the order of particular sentences, is never allowed to defeat the general intention of

the testator, as clearly manifested by all the provisions of the will taken as a whole.

The insertion, in the corresponding bequest in the eleventh article of the will, of an express direction for a transfer of the second half of the principal to the charities upon the death of the person entitled to the income of that half, tends rather to prove an accidental than an intentional omission of such a direc tion in the tenth article.

The result is, that the legal effect of the tenth article is to create, first, an equitable estate for life in the wife in the whole fund; second, an equitable estate for life in the husband in one half of the fund; and, third, subject to these equitable life estates, a vested remainder in the whole fund in the charities. This conclusion does not rest upon extrinsic evidence, nor upon conjecture; but upon a conviction produced by reading the will as a whole, a conviction which, as it seems to us, can only be avoided by confining one's self to a dissection of the several clauses, and to a separate scrutiny of each in an aspect in which they cannot have been presented to the mind of the testator.

*Decree accordingly.*