ESTATE OF RICHARD T. MAXWELL, DECEASED (NO. 3).

[No. 2,625; decided January 27, 1885.]

Will—Supplying Defects by Implication.—When, from the whole will, the court can determine that the testator necessarily intended an interest to be given, which is not bequeathed by express and formal words, the court should supply the defect by implication, and so mold the testator's language as to carry into effect, as far as possible, the intention which he has in the whole will sufficiently declared.

Will—Construction Avoiding Partial Intestacy.—The law prefers a construction of a will which will prevent a partial intestacy, to one which will permit such a result, unless a construction involving partial intestacy is absolutely forced upon the court, for the fact of making a will raises a very strong presumption against any expectation or desire, on the part of the testator, of leaving any portion of his estate beyond the operation of his will.

Wills—Construing Parts in Relation to Each Other.—All the parts of a will are to be construed in relation to each other, and so as if possible to form one consistent whole.

Will—Contradictory Clauses.—Where several parts of a will are absolutely irreconcilable, the latter part must prevail; but the former of several contradictory clauses is never sacrificed except on the failure of every attempt to give all such a construction as will render every part effective.

Will.—When the Meaning of Any Part of a Will is Ambiguous or doubtful, it may be explained by any reference thereto or recital thereof in another part of the will.

Will.—The Words of a Will are to be Taken in Their Ordinary and Grammatical Sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained.

Will.—The Words of a Will are to Receive an Interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative.

Will.—Where a Testator Gives to B a Specific Fund or property at the death of A, and in a subsequent clause disposes of all his property, the combined effect of the several clauses, as to such fund or property, is to vest it in A for life, and after his decease in B.

Will.—A Will Consisting of Several Parts, separately executed by the testator, must be considered as a single instrument completed in all its parts at one time.

Daniel Rogers, for applicants, the executors.

Thos. I. Bergin, for Miss Elena Donnelly.

A. F. Morrison, for Miss Margaret McKenzie.

J. R. Brandon, for the Tybout heirs.

COFFEY, J.   This is an application on the part of Daniel Rogers and Charles Ashton, executors of the last will and testament of Richard Tybout Maxwell, deceased, for distribution, according to "the provisions of said will"; and the application involves a construction of the terms of said instrument, which (as usually occurs in cases where a man draws his own will) has been variously interpreted according to the desire of the interested interpreter.   The views of the court as to the correct construction are appended.

Where it is possible for the court, upon a reading of the whole will, to arrive at a conclusion that the testator necessarily intended an interest to be given, which is not bequeathed by express and formal words, the court should supply the defect by implication, and so mold the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared: Metcalf v. Framingham Parish, 128 Mass. 370.   See opinion of Mr. Chief Justice Gray, p. 374.

The law prefers a construction of a will which will prevent a partial intestacy to one which will permit such result (Vernon v. Vernon, 53 N. Y. 361, opinion by Mr. Justice Andrews), unless such construction involving partial intestacy is absolutely forced upon the court, which rule of preference has been adopted partly from considerations of policy, but mainly because it is calculated to carry into effect the presumed intention of the testator; for the fact of making a will raises a very strong presumption against any expectation or desire, on the part of the testator, of leaving any portion of his estate beyond the operation of his will: 2 Redfield on Wills, 3d ed., *116, and see note thereunder 32.

All the parts of a will are to be construed in relation to each other, and so as if possible to form one consistent whole, but where several parts are absolutely irreconcilable,

the latter must prevail: Civ. Code, sec. 1321. Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will: Civ. Code, sec. 1323. The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained: Civ. Code, sec. 1324. The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative: Civ. Code, sec. 1325. The rule which sacrifices the former of several contradictory clauses is never applied but on the failure of every attempt to give to the whole such a construction as will render every part of it effective. Where a testator gives to B a specific fund or property at the death of A, and in a subsequent clause disposes of the whole of his property, the combined effect of the several clauses as to such fund or property is to vest it in A for life, and after his decease in B: 2 Jarman on Wills, 49, 5th Am. ed., *476.

In applying these principles of construction to the instrument before me (a copy of which is hereunder inserted):

"San Francisco, July 23, 1882.

"Fully aware of the uncertainty of life, and being of sound mind and memory, I declare this to be my last will and testament, hereby revoking all wills and codicils to wills by me heretofore made.

"The dilatory habits of my counsel employed in the divorce suit, recently decided in my favor in the Superior Court, having left thus far the matter incomplete in this, that the quit-claim deed from the former Mrs. M. W. Maxwell has not yet been signed and returned by her, nor has the mortgage in her favor upon my land in Napa County, securing to her the sum of one hundred and twenty-five dollars per month, been submitted to me for signature, I desire that my executors may at once, if it is possible, have this matter settled on this basis. Should this be impossible, she is of course entitled to her half of the property I leave behind me, which is all community property. Should it, under these circumstances, be necessary to sell in order to divide, it is

my desire that my executors shall, after paying all my debts, be appointed trustees by the Court, and that they shall receive as my bequest in trust the balance of the estate which I desire shall (if the property has been necessarily in their judgment sold to effect a division) be invested in first mortgages on real estate of unquestionable title, and the monthly income derived therefrom be equally divided between Miss Nellie Donnelly, residing at 2103 Jones street, with her parents, and Miss Margaret McKenzie, living at the northwest corner of Folsom and Second streets, that I may, so far as is in my power, prove my appreciation of their kindness and my sincere friendship for them both, trusting that I may lessen the burden of life to each of them. In case of the death of either of them, I wish the whole income paid to the survivor, and after her death the whole amount or then value of the property to be equally divided between the living children of my sister, Mrs. Elizabeth C. Tybout, living in New Castle County, Delaware.

"I hereby appoint Daniel Rogers, Esq., and Mr. Charles Ashton my executors, and direct that no bonds shall be required.        RICHARD TYBOUT MAXWELL.

"It is my earnest desire that if possible the real estate in Napa County shall not be sold, but held for some years, and rented on shares or otherwise by some competent person, and that it shall, after the lien upon it in the shape of the mortgage given or to be given to Mrs. Maxwell (formerly) shall have been removed by her death, be still so managed by my executors, or rather as they will then be the trustees for the heirs, and that Miss Margaret McKenzie shall, under these circumstances, receive during her life an income of one hundred dollars per month, if this does not exceed one-half of the income from the property, and the estate be in that case conveyed entire to Miss E. Donnelly, to whom I hope to be married, should my life be spared, in a few months. All of this expression of my desires as to settlement of my property is in consequence of my knowledge of the dangers attendant upon a surgical operation, to which I expect to be subjected in a short time.

"RICHARD TYBOUT MAXWELL."

I must consider it as one single instrument, completed in all its parts at one time, and, as such it was probated. From this instrument it appears that the testator had in view three objects: (1) the satisfaction of the lien upon the estate in favor of his former wife; (2) the provision of an income for Miss Donnelly and Miss McKenzie, that he might "lessen the burden of life to each of them," in recognition of their kindness to him and his friendship for them; and (3) the division of the proceeds of his property after the death of the others named to the children of his sister, Mrs. Tybout. The latter part of this instrument is to be reconciled, if possible, to the foregoing provisions: Civ. Code, sec. 1325; 2 Jarman on Wills, 49, *476.

This latter portion, which is claimed to operate as a revocation, should not be so construed, unless it is absolutely irreconcilable with the rest. It evidently was designed by the testator that the Tybouts should have the benefits of his bounty, after his other assumed obligations had been discharged by the death of the beneficiaries, and the latter part of the will may be reconciled with this intention by considering the contingency, and providing for it, of the death of the former Mrs. Maxwell, and in that event a larger amount coming into the hands of the trustees, in which case a fixed certain sum might be paid to Miss McKenzie, thus dispensing with the necessity of trustees to divide the estate, and enabling them to convey it entire to Miss Donnelly; that is to say (by way of interpretation), the estate held by the trustees is to be conveyed to Miss Donnelly to enjoy during her life, subject to the payment of $100 per month to Miss McKenzie. This seems to me to be the combined effect of the several clauses of the will (Jarman on Wills, 476), and I conceive it to be the correct construction of this instrument.

Throughout the paper the testator's intention seems to be to make life provision for Miss Donnelly and Miss McKenzie, to "lessen the burden of life to each of them," as he expresses it; and his intention is quite manifest to provide for his sister's children, after provision for Miss Donnelly and Miss McKenzie should be no longer necessary; to secure these two named ladies against want was his clear

design, by imposing a life lien upon his estate, and after that to give the remainder to the children of his sister. If this be not the true interpretation of his intention, he has certainly chosen his words cleverly to conceal his meaning; but I think that, upon a study of the whole instrument, I have arrived at the correct conclusion.

Daniel Rogers renounces his trust as trustee under the will, and his coexecutor, Charles Ashton, accepts the trust devolved upon him by the testator, and the estate should be distributed to him for the purposes named in said will, according to the provisions thereof as construed by the court in the foregoing opinion.

Application granted.

———

All the Various Parts of a Will are Construed in relation to each other, so as to form, if possible, one consistent whole; but if different parts are irreconcilable, the latter prevails: Cal. Civ. Code, 1321; Mont. Civ. Code, 1773; N. D. Rev. Code, 5133; Okl. Rev. Stats. 6841; S. D. Civ. Code, 1040; Utah Rev. Stats. 2771.

The Making of a Will Raises a Presumption that the testator intended to dispose of all his property. And constructions which lead to intestacy, total or partial, are not favored. Therefore such an interpretation should, when reasonably possible, be placed upon the provisions of a testamentary instrument as will prevent that result. These principles have been made a part of the statutory law. Of course, if the expressed intent of a testator is intestacy, he must be presumed to have intended that result: 1 Ross on Probate Law and Practice, 78.