ERASTUS BARTLETT & others *vs.* ABBIE L. C. HOUDLETTE.

Middlesex.　　April 3, 1888. — May 4, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Executor — Devise and Legacy — Residuary Clause.*

A bequest "to each of my nephews, one and all," will include those already given specific legacies under the will.

A testator, after giving various legacies, provided, in the final clause of his will, that "if in settling my estate there should not be money enough to pay the legatees what I have willed them, then pay one and all *pro rata* each, or if otherwise, the same *pro rata*." *Held,* that a surplus in the estate was to be divided among the legatees *pro rata* according to their legacies.

The executors were ordered to prepare and fence a cemetery lot, and to deposit funds the interest of which only was to be expended by a contemplated corporation in repairs thereon, and in addition were directed not to pay any legacies till the debts and the expense of fencing were paid and the deposits were made. *Held,* that the cemetery corporation was not a legatee within the meaning of the final clause of the will.

BILL IN EQUITY, filed October 20, 1887, by Erastus Bartlett, Thomas H. Lord, and Joseph E. Burtt, executors under the will of Warren R. Houdlette, against Abbie L. C. Houdlette and nineteen other heirs at law and next of kin of the testator, for instructions as to the disposition of the residue of his estate.

The bill alleged that Warren R. Houdlette made a will, dated November 9, 1882, which, after reciting the gift of legacies to various relatives, including two of his nephews, contained the following provisions, which alone are material:

"7th. I give to each of my nephews, one and all, one hundred dollars each.

"8th. I now come to the last though the most interesting part of the disposition of my property of which I wish and request my executors to carry out to the letter, it is this, I have a cemetery of about eight acres called Forest Hill Cemetery located in Dresden, Lincoln County, State of Maine, my native town where my ancestors and many others are buried which I have been for some time engaged in fencing and putting in order but is not yet completed, three sides are fenced but the south side is not fenced, I now request my executors to see that it is carried out

as I desire. [Here followed directions as to method of completing the fencing.] Then after the above is all completed I request my executors to place in bank, say, eight hundred dollars which shall be a permanent fund forever, the interest only to be used to keep the fences in good repair as it may be found necessary from time to time, also ($600) six hundred dollars I request my executors to be deposited in the same manner as the other for a different purpose, the interest only to be used for keeping the cemetery grounds in good order perpetually. Now a corporation will have to be made and by a petition to the legislature of the State of Maine it can be done so readily, so that it can be managed by regular officers chosen by the lot holders, then through its treasurer and secretary they can draw any part of the interest money that may be needed for fences or for keeping the grounds in good order, only in giving an order of interest money it must be approved of as correct by at least two of the selectmen and town clerk of the town, otherwise an order must not be paid by the bank or banks that hold the money on deposit under any considerations whatever.

" 9th. I request my executors to not pay out any money whatever for legacies until all the debts I leave behind are paid, also all the expenses for completing fences around the cemetery and for the money donated and placed in bank or banks for cemetery purposes whatever.

" 10th. I request the executors as all the property I have is in houses and building lots, that they will not make any unnecessary sacrifice to close it up too quickly, thereby saving as much as possible to the legatees.

" 11th. Now if in settling up my estate there should not be money enough to pay the legatees what I have willed them, then pay one and all *pro rata* each, or if otherwise, the same *pro rata.*"

The bill also alleged, that the testator died on May 30, 1883, and that the will was duly admitted to probate on September 25, 1883 ; that the plaintiffs were duly appointed executors under the will; and that, after the payment of debts, charges of administration, and legacies, there would remain in their hands as executors over $10,000, the proceeds of a duly authorized sale of the real estate.

The prayer of the bill was that the plaintiffs might be instructed as to whether the two nephews were each entitled to receive one hundred dollars under the seventh clause of the will, in addition to the other legacies given them; as to what persons were entitled to the residue of the estate; and as to whether the trustees of the cemetery were entitled to any portion of such residue.

The answers admitted the allegations of the bill.

Hearing on the bill and answers before *W. Allen*, J., who reserved the case for the consideration of the full court.

*J. W. Spaulding* (of Maine), for the two nephews and a niece.

*J. H. Flint*, for certain other nephews.

*L. W. Howes*, for a sister and certain nieces.

MORTON, C. J. The plaintiffs in their bill present two questions, one as to the construction of the seventh clause in the will, and the other as to the construction of the eleventh clause.

The seventh clause is as follows : " I give to each of my nephews, one and all, one hundred dollars each." There seems to be little room for doubt as to the meaning of this clause. The language clearly includes all his nephews. The fact that he had in the previous parts of the will given legacies to two of his nephews, furnishes no reason for cutting down his language and excluding them from the provisions of this clause, which clearly includes them. We can see no indication that the testator did not intend that, according to the clear import of his language, the nephews to whom legacies had previously been given should receive under this clause one hundred dollars equally with his other nephews. *Cushing* v. *Burrell*, 137 Mass. 21.

The eleventh clause is as follows : " Now if in settling up my estate there should not be money enough to pay the legatees what I have willed them, then pay one and all *pro rata* each, or if otherwise, the same *pro rata*."

This is carelessly and loosely drawn, but it is not difficult to discover what was the purpose and intention of the testator. And in such case the court will supply words and mould the language of the will for the purpose of carrying out the intention of the testator. *Metcalf* v. *Framingham Parish*, 128 Mass. 370. The first part of the clause clearly provides, that, in case

of a deficiency in the estate, so that all the legatees cannot be paid in full, their legacies shall abate *pro rata;* he then adds, " if otherwise," that is, if instead of there being a deficiency there is a surplus, " the same *pro rata.*" He clearly means to pay the same *pro rata* to the legatees named in this clause. The testator apparently intended to dispose of all his property; and we can see no other meaning of the language he used for a purpose except the one we have given it.

The further question is raised whether any part of the surplus or residuum of the estate should be paid to the cemetery corporation referred to in the eighth clause of the will. It seems to us clear that the testator did not intend to include the cemetery corporation in the provisions of the eleventh clause. They were not in his mind legatees within the meaning of that clause. In the eighth clause he does not give a direct legacy; he orders his executors to fence and otherwise prepare a cemetery lot, and to deposit in some bank eight hundred dollars, of which the interest was to be used to keep the fences in repair, and also six hundred dollars, of which the interest was to be used in keeping the grounds in order. The ninth clause provides that the executors shall " not pay out any money whatever for legacies until all the debts I leave behind are paid, also all the expenses for completing fences around the cemetery and for the money donated and placed in bank or banks for cemetery purposes whatever."

This shows clearly that the gift for cemetery purposes was to be preferred to legacies, and was not to abate *pro rata,* under the first provision of the eleventh clause. It appears reasonably clear, that the testator did not consider the gift for the benefit of the cemetery as a legacy, or that those who managed the money donated were legatees within the meaning of the eleventh clause, who were to be entitled to a share of the surplus if there was any. The residuum should be divided among all the legatees named in the will, not including the cemetery corporation, *pro rata* according to the amounts of their legacies.                                    *Decree accordingly.*