(Hamilton Co. O., Court of Common Pleas.) December, 1898.

IN RE PROBATE OF THE LAST WILL AND TESTAMENT OF GEORGE H. WILLIAMSON, DECEASED.

(For opinion of Probate Court, by Ferris, J., in this case, see 5 Nisi Prius, 1.)

(1). A decedent born in Cincinnati, and residing here from 1843 till 1866, and thereafter living in Paris, France, where he died, but who had returned here on visits, and had left his valuable securities here with a safe deposit company, and who declared in his will that he was a citizen of the United States domiciled in Cincinnati, was domiciled here animo et facto.

(2). Where the witnesses to a will saw him subscribe his name thereto, it is sufficient, under section 5916, notwithstanding they did not hear him acknowledge the instrument.

(3). In the divergence of authority as to the validity of a will which makes no disposition of property, the liberal rule should be adopted, so far as admission to probate is concerned, where an intention by the decedent to make a disposition of his property clearly appears.

[COPYRIGHT, 1899, BY CARL G. JAHN.]

SPIEGEL, J.

This cause comes before me upon appeal from a judgment of the probate court refusing probate to a document offered as the last will and testament of George H. Williamson, deceased, claimed to have been a citizen of Ohio but last residing at Paris, France.

The following is the official translation of said document:

"I, the undersigned, George H. Williamson, citizen of the United States of America and of the state of Ohio, legally domiciled in the city of Cincinnati, Ohio, but sojourning at present at Paris, France, 182 Boulevard Saint Germain, for reasons of health, sick in body but of sound mind, at the moment of appearing before God, (do) solemnly declare that I have always intended to return to my country and that the bad state of my health has prevented me from doing so. I declare that I am still a citizen of the state of Ohio and subject to its laws. I further solemnly declare, that the two persons who live, and have always lived with me and with their mother, under the names of Georgette and Henriette Williamson, are my legitimate daughters, issue of my union with Marguerite Grand-camp, dwelling with me (at) 182 Boulevard, Saint Germain, Paris. I declare further that I expressly revoke all testamentary dispositions that I have made up to this day.

"In testimony whereof I have signed and sealed these presents this fourth (day) of December, eighteen hundred and ninety-six.
(Signed) "George H. Williamson.

"Signed and sealed, and declared to be the expression of his last wishes, by George H. Williamson, in the presence of the subscribers, who at his request, and in his presence, and in presence of each other, have signed as witnesses, this fourth day of December, eighteen hundred and ninety-six.
"P. G. Tremond,
"9 Ecole de Medicine,
"Paris, France.
"B. Gergaud,
"32 Ave de l'Opera,
"Paris, France."

There was introduced in the hearing before me the testimony of Messrs. J. W. March and Victor T. Price, and of the attesting witnesses to the instrument, Messrs. P. J. Tremond and B. Gergaud.

Three questions are raised in this litigation: (1) Was the deceased domiciled in Cincinnati, Ohio? (2) Was the alleged will executed in accordance with the laws of Ohio? (3) Was it a will?

The first two questions, it seems, were not discussed in the probate court, but said court found in favor of the appellants upon these issues.

The testimony shows that Mr. Williamson was born in Cincinnati, and that he lived here from 1843 until 1866, when he went to Paris, where he resided until his death, making several visits to Cincinnati. Here the bulk of his property was located, and here he kept his valuable securities in a box rented for that purpose from a safe deposit company. Cincinnati was, therefore, the domicil of origin of the deceased. This domicil must be presumed to continue until a person has acquired another sole domicil by actual residence with the intention of abandoning his domicil of origin. This change must be animo et facto; for a person can only acquire a domicile of choice by combination of residence (factum) and intention of permanent or indefinite residence (animus manendi). The factum is established, and the question therefore recurs to the animus.

The only testimony is the declaration of the deceased himself: "I, the undersigned, George H. Williamson, citizen of the United States of America, and of the state of Ohio, legally domiciled in the city of Cincinnati, Ohio, but sojourning at present at Paris, France, for reasons of health." This declaration certainly shows that the deceased had not abandoned his domicil of origin, and being the only testimony upon this point, the probate court decided rightly that Cincinnati was his home.

The next question raised is: Was the instrument legally executed as a will? Counsel for appellees claim that the

document was not properly executed, inasmuch as it was not intended to be a will, and was not published as a will in the presence of or to the subscribing witnesses. Leaving aside the first proposition that the instrument was no will, which will be discussed later, was it, if a will, properly published?

Here let me first dispose of a misapprehension on the part of counsel, induced by a wrong translation of the attestation clause. Counsel seems to take it for granted that the translation, "Signed and sealed and declared to be the expression of his last wishes" is correct, and thereupon bases an argument that not only in the instrument proper, but in the attestation clause were the words last will and testament ever used, thereby showing an intention of the deceased to do anything else rather than make a last will and testament. But the translation is incorrect. The word *volonte* always means will, and when used in the plural, *volontes*, coupled with the adjective *dernieres*—last—it is idiomatic French, and always means last will and testament. Any argument therefore based on this mistranslation must fall to the ground.

Section 5916 provides that a will shall be attested and subscribed by two or more competent witnesses who either saw the testator subscribe or heard him acknowledge the same. In this case it is admitted that all the necessary steps were legally taken, but it is claimed that the witnesses did not hear the deceased acknowledge the instrument. The statute, however, requires either, and not both; and as the testimony shows that the witnesses saw the testator subscribe, this is sufficient; and the decisions cited by counsel do not controvert the clear meaning of the statute.

This brings me to the third query, long and earnestly discussed by counsel: Was the instrument propounded a last will? The probate court, in its decision refusing the probate, discussed the instrument at some length, and found that it did not make a disposition of property, wherefore it was not a will in the legal sense, but merely

the declaration of a wish, and that this was true notwithstanding the one executing the instrument might declare it to be his last will and testament. The court in making this finding was guided by the rule laid down by many text writers that an instrument which did not contain any devolution of property, although it might have all the other earmarks of a last will and testament, was not one, and therefore was not entitled to probate. Counsel for both appellants and appellees have furnished me with numerous authorities, ransacking the entire field of Anglo-Saxon jurisprudence, as to what constitutes a will. There seems to be a wide divergence of opinion, for as late as 127 U. S., 309, in Colton v. Colton, cur federal supreme court adopts Blackstone's definition declaring a will to "be a legal declaration of a man's intention which he wills to be performed after his death," without any actual mentioning of devolution of property.

There being this divergence of opinion, and the question being simply one of admission to probate, and not one of construction of the instrument itself, ought not the liberal rule be followed, that words may be supplied in a will to render the sense complete and inteligible in aid of the apparent intent to be collected from the whole context, and that a will must have a favorable interpretation and as near to the mind and intent of the testator as may be?

Keeping these rules in mind, what do we find from the testimony relative to the condition and apparent intent of the deceased? We find him living in Paris with a French lady, who for twenty years has borne the name of his wife, and with two daughters, supposed by all to be his legitimate children. Upon his deathbed, through a friend of the family, he calls in a French lawyer to draft a last will and testament with all the formalities necessary under our Ohio laws. We must not forget that this French advocate was educated under the civil law, and that under it the primary object of a will is the appointment of a heres, and not the devolution of

property, which follows the appointment, as of course, with universal succession.

To my mind, nothing is clearer than that M. Arnaud de Foiard considered the revocation of all former testaments and the naming of the Misses Georgette and Henriette Williamson as legitimate daughters, the institution of heirs, and a sufficient last will and testament, satisfactory also to the deceased. Ought not then the rule adopted by our federal supreme court in Robinson v. Portland Female Orphan Asylum, 123 U. S., 702, adopted from the supreme judicial court of Massachusetts in the case of Metcalf v. Farmingham Parish, 128 Mass., 370, be also the guiding star in this case, to carry out the intention of the deceased to provide for his wife and daughters, even if his marriage be only a common law marriage,—valid, however, in Ohio,—rather than leave his property to collateral heirs?

"The decision of this question doubtless depends upon the intention of the testator as manifested by the words that he has used, and an omission to express his intention cannot be supplied by conjecture; but if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to begin which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mold the language of the testator as to carry into effect, so far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared."

I believe the rule laid down by the supreme court furnishes the proper solution of the question before us, and while deeply mindful of the research and learning shown by the probate court in its decision, I conceive that the broader rule adopted by me will tend to do greater natural justice and still be within the confines of strict legal rules.

The appeal will therefore be granted, and the paper writing will be ordered to be probated as the last will and testament of George H. Williamson, deceased. Judgment may be taken accordingly.

Harmon, Colston, Goldsmith & Hoadly, for appellants.
Matthews & Bowler, contra.
December 24th, 1898.