DANIEL J. SHEA & another *vs.* MARY MAITLAND & another.

Suffolk.    December 1, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust,* Construction.    *Devise and Legacy.*

A testator who died leaving a widow and six children, four being of age and two being minors and sons by a second marriage, by two succeeding paragraphs of his will gave to the widow in trust for the benefit of the older minor son real estate worth about $26,500, and for the benefit of the younger minor son real estate worth about $35,300, the value of his entire estate being about $93,000. The trust provisions were the same, *mutatis mutandis,* and were in substance that the income from the property during the minority of the beneficiary should be "devoted to his care and education and after he shall have reached the age of twenty-one years the rents and income to be paid unto" the beneficiary "until he shall have attained the age of Thirty years when this trust shall terminate." There also was a provision in each paragraph that, if the beneficiary therein died before reaching the age of thirty years and unmarried, the trust should continue for the benefit of his brother beneficiary "upon the same terms and conditions." There was no further provision in the will for the disposition

of the property after the beneficiary had reached the age of thirty years.  The older of the two beneficiaries died unmarried and intestate at the age of twenty-five years.  The younger died at the age of thirty-seven years.  *Held,* that, upon the surviving beneficiary reaching the age of thirty years, the trust terminated and the real estate in both trusts passed as intestate property to the testator's heirs at law.

WRIT OF ENTRY, dated December 20, 1919.

The land described in the writ included the real estate described in the sixth and seventh clauses of the will of Cornelius O'Brien described in the opinion.

In the Land Court, the action was heard by *Davis*, J.  Material facts found by him and agreed to by the parties are described in the opinion.  At the close of the evidence, the demandants asked for the following rulings:

"1. On all the evidence the demandants are entitled to judgment.

"2. On all the evidence the demandants are the owners of fractions of the lands described in the first three parcels described in the demandants' writ.

"3. Upon the correct construction of the sixth and seventh clauses of the will of Cornelius O'Brien, the parcels described in the said clauses, subject to the trusts created by said clauses, in favor of Cornelius O'Brien, the younger, and of Michael C. O'Brien, descended to the heirs at law of Cornelius O'Brien, the elder.

"4. After the death of Cornelius O'Brien the younger, childless and unmarried, and after the death of Michael C. O'Brien who died childless and unmarried, the property described in the sixth and seventh clauses of the will, descends as if Cornelius O'Brien the elder had died intestate.

"5. The true construction of the sixth and seventh clauses together with all other parts of the will shows partial intestacy of the estate of Cornelius O'Brien the elder.

"6. Upon the death of Cornelius O'Brien, the fee in the property described in the first three parcels in the demandants' writ descended to his heirs at law, subject only to the trusts created for his sons Michael C. and Cornelius, with a possibility of a continuance of such trusts for the benefit of the children of said Cornelius, the younger and of said Michael and subject to such dower rights or rights under statute as his widow might have therein.

"7. The death of Cornelius O'Brien the younger, terminated all rights in the first three parcels described in the demandants' writ except the rights of the heirs at law of Cornelius O'Brien the elder, or the heirs, devisees, or grantees of such heirs.

"8. The deaths of Cornelius O'Brien and his brother Michael C. O'Brien, both having died unmarried and leaving no children, terminated the trusts created by the sixth and seventh clauses of the will.

"9. The trusts created by the sixth and seventh clauses of the will terminated when Cornelius O'Brien the younger, attained the age of thirty years, his brother Michael C. O'Brien having previously died childless and unmarried."

The rulings were refused and judgment was ordered for the tenants. The demandants alleged exceptions.

*P. D. Morris,* (*D. J. Shea* with him,) for the demandants.

*S. C. Brackett,* for the tenants.

CROSBY, J. This is a writ of entry brought in the Land Court by two of the grandchildren and heirs at law of Cornelius O'Brien, to recover undivided portions of certain real estate which was owned by him at the time of his death on October 3, 1893. He died testate, leaving six children and a widow; by his first wife he had four children; and by his second wife, two children, Michael and Cornelius.

In his will he made provision for all his children. The questions for our decision relate to the sixth and seventh articles of the will. Article sixth reads as follows:

"I devise and bequeath unto my wife Abby OBrien the Real Estate land and buildings Numbered 172–174–176 and 178 on Eliot Street in said Boston also the land and wooden buildings now occupied as a Shoemaker Shop situated on the South east corner of Eliot and Carver Street in said Boston but in trust nevertheless for my minor son Cornelius OBrien the rents and income received during his minority to be devoted to his care and education and after he shall have reached the age of twenty one years the rents and income to be paid unto the said Cornelius OBrien until he shall have attained the age of Thirty years when this trust shall terminate in the event of the death of the said Cornelius OBrien before attaining the age of thirty years and in the event of his dying unmarried this trust to continue for the benefit of my son Michael

C. OBrien upon the same terms and conditions in the event of his coming (Connie's) marriage for the benefit of his children."

Article seventh devises other real estate in trust to his widow for the benefit of his son Michael and is substantially identical with the provisions of article sixth and provides in the event of the death of Michael before reaching the age of thirty years and being unmarried, that the trust is "to continue of [for] the benefit of my son Cornelius upon the same terms and conditions in the event of his Michael's marriage the trust to continue for the benefit of his children."

It is the contention of the demandants that the devises in trust for Michael and Cornelius in any event were to continue until they respectively reached the age of thirty years, and then the remainder should be divided among all the testator's heirs as intestate property.

It is the contention of the tenants as stated in their brief, that "either Abby O'Brien took a fee in trust for Cornelius, who took a vested equitable fee, which was subject to certain restrictions as to his use of the income till he was thirty, and was also subject to be divested if he died under thirty by a springing use in favor of his brother or of his own children, or Cornelius took a fee subject to the limitations and restrictions of the trust until he was thirty."

Michael died in 1901 in his twenty-fifth year, unmarried, intestate; Cornelius died in 1914, in his thirty-seventh year and was unmarried; he died testate, his mother Abby O'Brien was made the devisee of his estate. The tenants are the residuary devisees of Abby O'Brien.

The question then is what was the intention of the testator respecting the disposition of the remainder of the real estate described in articles six and seven. It is expressly provided in articles six and seven that when the sons respectively referred to shall have attained the age of thirty years, the trust therein created shall terminate. There is nothing in these articles to indicate what disposition the testator intended to make of the remainders in the real estate so left in trust, nor can we find in any other part of the will a manifestation of the testator in this respect.

It is argued by the tenants that, as the four children of the

testator by his first wife at the time of his death were either married with comfortable homes or were in business and had received substantial legacies or devises under the will, it was not his intention that they should receive any part of the real estate in question but that such real estate should be vested in the two younger sons, subject to the trusts created in articles six and seven; that the trust terminated in any event when they respectively arrived at the age of thirty; and that at the time of the death of Cornelius, he then being more than thirty years of age, the real estate was vested in him in fee.

It is agreed that the property left in trust for Cornelius was worth $35,300, and that left in trust for Michael, $26,500; and under the eighth article of the will Michael was also given the remainder in certain real estate in which the testator's widow took a life estate, which was valued at $9,500.

There was evidence that the entire property amounted to about $93,000, and while the amount of the debts and charges of administration was not shown, it is apparent that the estates left in trust to Cornelius and Michael amounted to about two thirds of his entire estate. We cannot say that the trusts so created for their benefit and comprising so large a part of his estate and to continue until they respectively arrived at the age of thirty years, were not considered by him to be more beneficial to them if they lived until they were thirty years of age, than a devise of the property to them in fee, especially as they would share in the remainder of the trust property, if living at the termination of the trust, with the other children. The dominant purpose in the testator's mind as shown by articles six and seven was to provide for the care, maintenance and education of his two younger children until they reached the age of thirty years respectively; and whatever may have been his intention as to the disposition of the remainder it cannot be given effect unless it is indicated by the language of his will. It cannot be inferred by silence, conjecture or extrinsic evidence. *Metcalf* v. *Framingham Parish*, 128 Mass. 370, 374. *Boston Safe Deposit & Trust Co.* v. *Coffin*, 152 Mass. 95. *Sanger* v. *Bourke*, 209 Mass. 481.

As Michael died unmarried and before he was thirty years of age, the income of the estate under the trust for his benefit was payable after his death to Cornelius. After the latter reached the

age of thirty years, both trusts came to an end, without any provision in the will for the disposition of the remainder. *Springfield Safe Deposit & Trust Co.* v. *Dwelly,* 219 Mass. 65. The eighth article indicates that the testator knew how to dispose of an estate in remainder if he desired to do so. As the equitable title to the principal of the trust estate never vested in Michael or Cornelius, the cases of *Fay* v. *Phipps,* 10 Met. 341, *Seaver* v. *Griffing,* 176 Mass. 59, *Powers* v. *Rafferty,* 184 Mass. 85, *Hayward* v. *Rowe,* 190 Mass. 1, and similar cases have no application. The case is governed by the principles declared in *Boston Safe Deposit & Trust Co.* v. *Buffum,* 186 Mass. 242, *Bragg* v. *Litchfield,* 212 Mass. 148, *Springfield Safe Deposit & Trust Co.* v. *Dwelly, supra, Bailey* v. *Bailey,* 236 Mass. 244, and the real estate must be held to be intestate property.

It follows that the rulings requested by the demandants should have been given, and the entry must be

*Exceptions sustained.*