OLD COLONY TRUST COMPANY, trustee, *vs.* MARY L. MOLLESON & others.

Essex.     March 2, 1942. — March 1, 1944.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Devise and Legacy*, Intestacy, Remainder.

A will as a whole, including provisions establishing a trust of the residue to pay the income severally to the testator's six children during their lives and upon the death of any child to transfer his share of the capital to his living lineal descendants, if any, otherwise to add it to the other property in the hands of the trustee and hold it "for the same purposes as the other" property, disclosed a purpose of the testator that the capital ultimately should pass to the lineal descendants of his children; and although there was no specific provision in the will covering the contingency of the survivor of the children dying without leaving any lineal descendant, which happened, there was not an intestacy as to the capital then in the hands of the trustee, consisting of the shares of four children, including the survivor, who died without leaving lineal descendants, but the remaining capital should be distributed to then living lineal descendants of the other two children.

PETITION, filed in the Probate Court for the county of Essex on May 28, 1941.

The case was heard by *Costello*, J.

*I. W. Sargent*, stated the case.

*V. P. Clarke*, for Vincent P. Clarke, executor.

*W. E. Rowell*, for Mary L. Molleson and another.

*D. E. O'Brien* of California, for Joseph G. Fallon, submitted a brief.

QUA, J. The petitioner seeks instructions as to the distribution of a trust fund created by the will of John

Fallon, late of Lawrence. A former decision with reference to the same trust throws little light on the present issues. *Old Colony Trust Co.* v. *Molleson*, 292 Mass. 342.

John Fallon died in 1889, leaving a widow and six children. The widow died in 1893. The children were Emma E. Fallon, Dalton Fallon, John Howard Fallon, Franklin Fallon, Jeannette M. Fallon and James E. Fallon. All the children survived both the testator and his widow. The will, made in 1886, after providing for the payment of debts and expenses, set up a trust of the residue in the hands of the executors as trustees. The testator's widow was to have the use and income during her life. Pertinent provisions to take effect upon the death of the widow are contained in paragraphs Fourth, Fifth, Sixth, and the first portion of paragraph Seventh. We quote them as they appear in the will.

"Fourth: The residue of said estate shall then be held by my said executors for such of my children as may be living at the decease of my said wife and for the lineal descendants of any child who shall have died before that time, such lineal descendant taking by representation the share to which such deceased child would have been entitled if living; and my said executors shall pay to them severally semiannually or oftener the net income thereof; but said estate or its income shall not be anticipated by assignments or otherwise and shall be free from the interference or control of creditors. The said residue shall be held for my children, except as stated below, until the expiration of their natural lives and for such lineal descendants, if any until they shall severally attain the age of twenty one years or until their deaths respectively before attaining that age.

"Fifth: If either of my children shall die, leaving no issue but a widow or widower surviving them that share shall still be held and the income thereof shall be paid to such widower or widow until he or she shall remarry or die.

"Sixth: Upon the termination, as above provided, of the right of such of my children as shall outlive my said wife, the share held for such child shall be transferred to his or her lineal descendants, if any are living. If such child has

no lineal descendants living at his or her death, the share of such child shall be added to the funds in the hands of my executors and held for the same purposes as the other funds in their hands.

"Seventh: If the provision herein made for the lineal descendants of any child who dies during the life of my said wife, terminates by the arrival of such descendant at the age of twenty one years, the share of such descendant shall thereupon be transferred and paid to such descendant. If any such lineal descendant of a child who dies during the life of my said wife shall die under the age of twenty one years, his or her share shall be added to the fund held for the other descendants of such child. If all such descendants of such child who dies during the life of my said wife, shall die before attaining the age of twenty one years, the fund held for them shall be added to the funds in the hands of my said executors and held for my other children and their descendants upon the conditions hereinbefore stated."

After provisions relating to investments and sales occurs this clause, "I give to my children . . . [naming them] no estate in present possession and no estate except as above stated."

Upon the death of the testator's widow, the income of the fund was paid to the testator's children under paragraph Fourth. Since all the children survived the widow, the provisions of that paragraph and of paragraph Seventh for the lineal descendants of any child who died before the widow never became operative. Between 1911 and 1941, inclusive, all the children of the testator died. The son Dalton Fallon left as a lineal descendant his daughter Mary L. Molleson, a granddaughter of the testator. John Howard Fallon left as a lineal descendant a son Howard Fallon, who died in 1931, leaving a son Joseph Greenleaf Fallon, who is still living and who is a great-grandson of the testator. The other sons and the daughters of the testator died without leaving lineal descendants. Upon the deaths of the testator's children who left lineal descendants the proportionate shares of the capital of the trust fund upon which such children were then receiving income were paid

over to their lineal descendants in accordance with paragraph Sixth. Upon the deaths of those of the testator's children who left no lineal descendants the proportionate shares of the capital of the trust fund upon which they were then receiving income continued in the hands of the trustees in accordance with paragraph Sixth and were "held for the same purposes as the other funds in their hands." Some payments of income were made at times under paragraph Fifth to surviving widows of children of the testator, but all widows have now deceased, and these payments have not interfered with the general course of events as herein outlined. The last surviving child of the testator was Jeannette M. Fallon, who died in 1941. By that time two sixths of the capital of the trust fund had been paid out to the lineal descendants. of Dalton Fallon and John Howard Fallon. Jeannette M. Fallon, as the result of income formerly received by her brothers and sister who had died without lineal descendants having been added to her own original sixth share, was receiving the income of the entire remaining four sixths of the fund.

But Jeannette M. Fallon left no lineal descendants, and out of this fact arises the present difficulty. Upon the previous deaths of each of the children of the testator it has been possible to carry out exactly and literally the provisions of paragraph Sixth. If the child left lineal descendants, as two of them did, "the share held for" the deceased child could be, and was, paid over to his lineal descendants. If the child left no lineal descendants "the share of such child" could be, and was, "held for the same purposes as the other funds in their hands" — to pay the income to remaining children. But now there are no remaining children, and "the share" of Jeannette M. Fallon was itself the whole remaining fund. There are no "other funds" in the present trustee's hands to which this sum can be added. Paragraph Sixth by its terms seems intended to apply upon the occasion of the death of Jeannette M. Fallon as it has applied upon the occasions of the deaths of the other children of the testator, but to comply literally with its provisions has become impossible. The appellants, who would take in

the right of the next of kin of the testator, contend that the remaining capital of the trust was not disposed of at all by the will, and that it goes to them as intestate property. The judge of probate rejected this contention and entered a decree reciting that it appeared to be the intention of the testator that upon the death of the last person entitled to income the remaining principal should be distributed by right of representation to such of the lineal descendants of the testator's children as were living at the death of his last surviving child. We think that the judge was right.

We are satisfied that the testator intended to make a complete disposition of his property and did not intend an intestacy in the one contingency that has happened. The difficulty is that he expressed himself in terms inappropriate to the particular event. If, however, his true intent can be discovered from the will itself by an examination and comparison of all its parts it is our duty to give effect to that intent, even though it is not set forth "by express and formal words." We must "supply the defect by implication." *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, 374. In our opinion the scheme of the will as a whole indicates that all the capital of the trust was eventually to be distributed among the lineal descendants of the testator's children by right of representation. No final distribution to anyone else is provided for anywhere in the will. It is made plain by paragraphs Fourth and Seventh that final distribution of the "share" of any child who should die before the testator's widow was to be made to his lineal descendants by right of representation, and that in the event of failure of the line of any child before distribution his "share" should be held for the other children and their lineal descendants according to paragraph Sixth. Paragraph Sixth carries out the same general scheme with respect to the shares of children who survive the widow. If Jeannette M. Fallon, the last survivor, had left lineal descendants the testator's scheme would have been carried to completion without difficulty. The entire capital of the trust would have passed to lineal descendants of his children. The "share" of each child who died without lineal descendants

would eventually have gone to lineal descendants of other children. We do not believe that the testator intended that the process which began with the death of his first child and continued until the death of his sixth child should then wholly cease and an entirely different set of consequences ensue altogether out of conformity with those which had ensued upon the preceding five deaths merely because it happened that one of the children who had no lineal descendants was the last survivor. The testator intended to provide for the inevitable deaths of all of his children, including the last one, whether or not that last child left lineal descendants. But the language used in the last sentence of paragraph Sixth is obviously inadequate to the occasion, since upon the death of the last survivor there is no remaining child of the testator for whose benefit the trust can continue. The inadequate language must be aided and supplemented by drawing liberally from the general plan and purpose of the will in so far as this is possible in order that the testator's true intent may not fail. It is plain that the testator conceived of his estate as divided into as many so called "shares" as he had children and intended that upon the death of each child his "share" should either be distributed to his lineal descendants, or if he left no lineal descendants, should be added to the other "shares" for the benefit of other children during their lives and ultimately of the lineal descendants of other children who should leave lineal descendants. This general scheme can still be substantially carried out in a manner appropriate to the existing facts if the six original "shares", although some of them have in fact been paid over to lineal descendants of deceased children, and other "shares" (of children who died without lineal descendants) have been preserved with or "added to" the fund held for the benefit of survivors, are regarded as still theoretically existing, and if the remaining capital constituting the "share" of the last surviving child with the accretions to it from the "shares" of those who have deceased without leaving lineal descendants, is now "added to" the theoretically existing "shares" of children who died leaving lineal descendants by paying it over to those lineal descend-

ants who have already received and may now be regarded as holding their ancestors' "shares."

This is no doubt a strong application of the principle of *Metcalf* v. *First Parish in Framingham,* 128 Mass. 370, and carries that principle about as far as it ought to go, but still we think that it falls within the boundaries of construction and does not make a new will for the testator. It goes no farther than this court went in *Sanger* v. *Bourke,* 209 Mass. 481. In that case the testator had made a disposition of his property strikingly similar to that in the present case, and there, as here, the last surviving child had died without issue. It was held that the capital of the fund, as it then existed, should revert to the issue of those children who had previously died leaving issue, to be distributed among them by right of representation, notwithstanding that they had previously received the shares of the capital of which their own ancestors were at the times of their deaths receiving the income. Somewhat similar cases reaching a similar result are *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95, *Dary* v. *Grau,* 190 Mass. 482, and *Wentworth* v. *Bell,* 249 Mass. 120. See *Fitts* v. *Powell,* 307 Mass. 449.

Costs and expenses of this appeal may be allowed in the discretion of the Probate Court.

*Decree affirmed.*