CHARLES HARTWELL CHATER (A MINOR), BY HIS NEXT FRIEND AND GUARDIAN, CHARLES H. CHATER; CHARLES H. CHATER IN HIS OWN RIGHT AND AS GUARDIAN OF SAID CHARLES HARTWELL CHATER (A MINOR), AND CHARLES H. CHATER AS ADMINISTRATOR OF THE ESTATE OF CHARLOTTE LEE HARTWELL CHATER, DECEASED, v. ALFRED W. CARTER, TRUSTEE, ALFRED W. CARTER, EXECUTOR OF THE LAST WILL AND TESTAMENT OF ALFRED S. HARTWELL, DECEASED, MABEL R. HARTWELL, AND THE HAWAIIAN SUGAR COMPANY, A CORPORATION.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED FEBRUARY 17, 18, 1914.          DECIDED MARCH 6, 1914.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TRUSTS—*contingent interest—resulting trust—interest by implication.*

H, on March 27, 1909, delivered to C a certificate of stock in a corporation made out in the name of C as trustee for L, a recently married daughter of H, together with a letter in which it was

stated *inter alia* that "the trust for Lottie Lee is to cause the dividends to be paid to her during the three years from January 1st next and if she shall then be living to transfer the shares to her or hold them in trust for her benefit as she may in writing request, unless at the end of three years she shall have no child living, in which case the trustee is to hold the stock paying her the dividends during her lifetime, with power to change the investment and vary it at any time at discretion and at her death to divide the trust funds or securities equally among her sisters who shall then be living, and if none shall then be living among their children then living, my object being, as Mr. Chater will observe, that as to these additional 585 shares they shall remain in my family." The letter contained other directions with reference to other certificates of stock given at the same time either directly or in trust for other daughters. L gave birth to a son on August 30, 1909, and died on September 3, 1909. After the delivery of the letter and certificate to C the dividends on the stock were forwarded to L by H or C, receipts therefor being given by L to C as trustee. After the death of L, C paid the dividends to H and finally endorsed and delivered back to H the certificate of stock which thereupon was given by H to his daughter M. Held, that the gift of the stock to L was contingent upon her being alive on January 1, 1913; that the gift lapsed upon the death of L and the trust resulted to H; that there was not an implied gift to L's son upon the death of his mother; and that the gift of the dividends was intended to be solely to L personally, was contingent upon her being alive at the time the direction to pay was to take effect, and lapsed by reason of her death before that time.

OPINION OF THE COURT BY ROBERTSON, C.J.

This is an appeal from a decree dismissing a bill in equity for an accounting for certain shares of the capital stock of the Hawaiian Sugar Company, a corporation, and the dividends declared thereon since August, 1909, with interest. In the court below the parties agreed upon the facts, their stipulation, as amended in this court, reading as follows:

"Alfred S. Hartwell died in Honolulu on the 30th day of August, 1912, leaving a will, duly proved in the Circuit Court of the First Circuit, Territory of Hawaii, on the 15th day of

October, 1912. The defendant Alfred W. Carter was appointed executor in said will and qualified and is now acting as such. Charles A. Hartwell, also appointed, did not qualify. The deceased was from 1868 to 1874 a judge of the Supreme Court of Hawaii, from 1874 to 1904 one of the leading attorneys in Hawaii, and from 1904 to 1907 a judge, and from 1907 to 1911 chief justice of the Supreme Court of Hawaii. He was the father of seven daughters all of whom except Charlotte Lee Hartwell Chater now survive, to-wit, the five named in the instrument dated March 27, 1909, attached to the complaint herein and marked 'Exhibit A,' namely: Charlotte Lee Hartwell Chater, Mabel R. Hartwell, Dorothy Hartwell, Bernice Hartwell and Juliette Hartwell, 'Lottie Lee,' named in said instrument Exhibit 'A,' being Charlotte Lee Hartwell Chater, and 'Mabel,' being Mabel R. Hartwell, and also Madeline Hartwell Judd and Edith Hartwell Carter, the latter being then and now the wife of Alfred W. Carter, defendant. Charlotte Lee Hartwell Chater had been married to the complainant, Charles H. Chater, shortly before the date of said instrument, to-wit, on July 15, 1908, and was then on March 27, 1909, of the age of thirty-two years and without children. The daughters named in said instrument other than said Charlotte and Mabel, were at that time unmarried. All the daughters were of age. Mabel had children, who still survive.

"Charlotte Lee Hartwell Chater died in Natick, in the County of Middlesex, Commonwealth of Massachusetts, where she had been residing with her husband, Charles H. Chater, on the 3rd day of September, 1909, in childbirth, intestate, leaving the complainants, her husband, Charles H. Chater, and one child, the complainant, Charles Hartwell Chater, who was born on August 30, 1909; thereafterwards, on the 15th day of November, 1909, the Probate Court of the County of Middlesex duly appointed the complainant, Charles H. Chater, administrator of the estate of said Charlotte Lee Hartwell Chater, and issued letters to him, and he duly qualified as such and is now acting; and said Probate Court, on the 17th day of December, 1909, duly appointed said Charles H. Chater guardian of the person and estate of the complainant, Charles Hartwell Chater, and issued letters of guardianship to said Charles H. Chater, who qualified and is now guardian of said Charles Hartwell Chater.

Chater v. Carter, 22 Haw. 34.

"The Hawaiian Sugar Company is and was at all times hereinafter named a corporation existing under the laws of the Territory of Hawaii, having its usual place of business in Honolulu, in said Territory.

"Said Alfred S. Hartwell, being a man of ample means and the owner of a large number of shares in the Hawaiian Sugar Company, on the 27th day of March, 1909, transferred to the name of Alfred W. Carter, as trustee for Charlotte Lee Hartwell Chater 585 of such shares and caused a certificate to be issued to the said Alfred W. Carter as trustee for Charlotte Lee Hartwell Chater for said 585 shares, and delivered said certificate to said Alfred W. Carter, Trustee, and, at the same time, executed and delivered a declaration of trust, as follows:

"Honolulu, T. H., March 27, 1909.

"Mr. Alfred W. Carter,
　　　"City.

"Dear Alfred:—

"I enclose certificate in your name as trustee for Juliette for 415 shares and another certificate in your name as trustee for Dorothy for 420 shares, another in your name as trustee for Lottie Lee for 585 shares, also a certificate in Lottie Lee's name (being those which I gave her before she was married) for 250 shares, also three blank forms of receipts in duplicate for you to sign and hand to me, if you please.

"The trust for both Juliette and Dorothy is to see that the dividends are paid to them, or, what I presume would be better, placed to their credit with Bishop & Co. where each of them now has an account. If either of them should die before returning here her shares are to be divided between the two surviving unmarried girls; if neither of them returns both their shares to go to Bernice, if living, otherwise to all the surviving sisters equally. I am aware that this is simply a temporary arrangement—I hope it is—and that either of them has a right to call upon you to make over the shares to her at any time.

"The trust for Lottie Lee is to cause the dividends to be paid to her during the three years from January 1st next and if she shall then be living to transfer the shares to her or hold them in trust for her benefit as she may in writing request, unless at the end of three years she shall have no child living,

in which case the trustee is to hold the stock paying her the dividends during her lifetime, with power to change the investment and vary it at any time at discretion and at her death to divide the trust funds or securities equally among her sisters who shall then be living, and if none shall then be living among their children then living, my object being, as Mr. Chater will observe, that as to these additional 585 shares they shall remain in my family.

"I also enclose for you to retain for Mabel Certificate No....... in her name for 200 shares Hawaiian Sugar Stock.

"I have been arranging with the Brewers to draw my salary and to pay Lottie Lee and Mabel on the 15th of each month their dividends. I can continue to do this although it may be better for some reasons to arrange with Alexander & Baldwin to remit the dividends directly to them from New York, in which case there would be a charge of 20 ct. a hundred unless they shall accede to my request to make no charge for exchange.

"I also enclose certificate in Bernice's name for 420 shares which I am now giving her and also for 165 shares which I gave her recently. I do not know where the certificate for her 250 shares which I formerly gave her is. I think it would be wise if the certificates of all the girls should be retained in your office and to have that understood by them.

"Very Truly,
"ALFRED S. HARTWELL.

"This declaration of trust is the aforesaid 'Exhibit A.'

"At the same time, similar certificates were issued and delivered to said Alfred W. Carter, as trustee for Juliette Hartwell and Dorothy Hartwell, for the shares mentioned in said declaration.

"On the same day Alfred S. Hartwell caused a certificate to be issued in the name of Charlotte Lee Hartwell Chater for the 250 shares referred to in the declaration of trust, which certificate was also handed to said Alfred W. Carter.

"Charlotte Lee Hartwell Chater was duly notified of these transactions, the information coming through a letter from Alfred S. Hartwell to Charles H. Chater on March 29, 1909, as follows:

"Honolulu, T. H., March 29, 1909.
"Mr. Charles H. Chater,
       "South Natick, Mass.
"My Dear Mr. Chater:—

"I have not been a good correspondent for I have had many cares and responsibilities resting upon me.

"I am simply writing to you now about a matter of Lottie Lee's which I do not wish to write to her under present conditions or to trouble her at all about it. It is this—before her marriage I had given her 250 shares of the Hawaiian Sugar stock paying regularly a monthly dividend of $75. Since a sale was made last summer of my large holdings in the American Sugar Co. (Molokai ranch) I have paid off the heavy indebtedness which had been burdening me for several years and am now dividing the shares in the Hawaiian Sugar stock which formerly had been pledged for my indebtedness in such way as to give Lottie Lee 585 shares more, which I am placing with Alfred W. Carter in trust (as explained in my letter to him) 'to cause the dividends to be paid to her during the three years from January 1st next and if she shall then be living to transfer the shares to her or hold them in trust for her benefit as she may in writing request, unless at the end of the three years she shall have no child living, in which case the trustee to hold the stock paying her the dividends during her lifetime, with power to change the investment and vary it at any time at discretion and at her death to divide the trust funds or securities equally among her sisters who shall then be living, and if none shall then be living among their children then living, my object being, as Mr. Chater will observe, that as to these additional 585 shares they shall remain in my family.'

"I have been in the habit of arranging with Charles Brewer & Co. in Boston to collect my salary and pay Lottie Lee $200 a month on my account; I am now writing them to send her $250 instead on April 15, May 15, and June 15. Alfred, as her trustee, will require receipts for the dividends on the 585 shares which he holds in trust, which will be $175.50 a month. I accordingly enclose receipts for Lottie Lee to sign and send to him.

"I will also cause the Brewers to continue to send the $75 a month for April, May and June dividends on the 250 shares,

which I will collect here and have them pay on my account. One reason why I do not arrange for longer payment by them is that I am quite likely to go east in June—I hope to do so—and to see you all—and am aware of the .uncertainties of life, you know. Alfred will arrange after that to send a bill of exchange to Lottie Lee monthly for the entire $250.50 coming to her, less exchange, which will be a small sum if he arranges to have the New York agents do this, which I think he will.

"It might also be well for Lottie Lee to give Alfred her proxy as to the 250 shares which I am turning over to him, a form for which I am enclosing herewith.

"I .am making the same apportionment of my property between Madeline, Lottie Lee, Juliette, Bernice and Dorothy, future arrangements for the others to await contingencies, and I am in my will giving my homestead to Juliette, Bernice and Dorothy, while there will always be a home where any of their sisters and their families will be welcome.

"I am much gratified to learn that you are going out to South Natick. I shall hope to be able to go out there this summer, in which case I may arrange to live in the old cottage (Aunt Martha's house) where my childhood and many of my later years were spent. I do not mean that I am not well assured of a welcome from you and Lottie Lee in the new cottage, but by going into the old house I shall feel free, as you can see, to get a friend or two out there at any time when it will not interfere with Mabel and her family going there. At any rate I have not been there since my sister's death and that will be the place in which I should like to stay, it now seems to me, when I am east in the summers.

"You will know best whether to trouble Lottie Lee just now to look this letter over. Do entirely as you think fit.

"Faithfully yours,
"(Sgd.)      ALFRED S. HARTWELL.

"Alfred W. Carter endorsed and deposited the dividend warrants on said 585 shares for the months of April, May and June, 1909, in the bank to the credit of Alfred S. Hartwell, who subsequently paid the amounts of the dividends over to Charlotte Lee Hartwell Chater, who thereafter sent to said Alfred W. Carter receipts for the same, the receipt for the dividends for the month of April reading as follows, the receipts for the months of May and June being in the same form:

'Boston, Mass., April 15, 1909.

'Received of Alfred W. Carter, Trustee, per Charles Brewer & Co., one hundred seventy-five and 50-100 ($175.50) dollars, April dividends on 585 shares Hawaiian Sugar Co. stock, held by him as my trustee.

'(Signed)     CHARLOTTE L. H. CHATER.'

"Alfred W. Carter endorsed and deposited in the bank the dividend warrants on said shares for the months of July and August, 1909, and sent the amounts of the said dividends to Charlotte Lee Hartwell Chater.

"Alfred W. Carter endorsed and delivered the dividend warrants on said shares for September, 1909, and the following months to A. S. Hartwell, until the transfer of said shares to A. S. Hartwell.

"After the death of said Charlotte Lee Hartwell Chater the defendant, Alfred W. Carter, delivered to her said administrator said certificate for 250 shares, but without the knowledge or consent of the complainants, endorsed as trustee for Charlotte Lee Hartwell Chater, said certificate for 585 shares to said Alfred S. Hartwell, and a new certificate was on November 29, 1909, issued to said Alfred S. Hartwell in his own name by the defendant the Hawaiian Sugar Company. On the 18th day of May, 1910, said Alfred S. Hartwell transferred said certificate for 585 shares to the defendant, Mabel R. Hartwell, and the defendant Hawaiian Sugar Company issued a new certificate on that date to said defendant, Mabel R. Hartwell, in her name for 585 shares, she not knowing at the time that the stock was the same stock which her father had previously transferred to Alfred W. Carter, Trustee, for her sister, Charlotte Lee Hartwell Chater, and having no knowledge of the terms of that trust but receiving the same without consideration and as a gift from her father and not on any secret trust or understanding.

"It is conceded, if admissible, that the said transfer of said stock by Alfred W. Carter to Alfred S. Hartwell was made by said Alfred W. Carter in good faith and on the demand of said Alfred S. Hartwell and under the advice of counsel sought and received by said Alfred W. Carter, and that the said transfer of said stock by Alfred S. Hartwell to Mabel R. Hartwell was made by said Alfred S. Hartwell in good faith and under the

advice of counsel sought and obtained by him after the demand for said stock made on him by said Charles H. Chater.

"On the 1st day of July, 1910, the Hawaiian Sugar Company declared a stock dividend of 50 per cent, paid the said Mabel R. Hartwell $20 for a fractional one-half share, and on July 2nd issued to the said Mabel R. Hartwell as said dividend 292 shares additional stock, which were included in a new certificate for 1552 shares in Mabel R. Hartwell's name, which 1552 shares are still standing in her name.

"$877.50 was paid to A. W. Carter, Trustee, between September 3, 1909, and November 29, 1909; $526.50 to Alfred S. Hartwell between November 29, 1909, and January 1, 1910 and the further sum of $1170.00 to Alfred S. Hartwell between January 1, 1910, and May 18, 1910; $11,109.00 to the defendant, Mabel R. Hartwell between May 18, 1910, and January 1, 1913; and the further sum of $789.30 to the defendant, Mabel R. Hartwell, between January 1, 1913, and March 18, 1913, the day of the filing of the bill, as dividends on the stock in suit, making a total of $14,472.30, of which $12,279.00 was paid between January 1, 1910, and January 1, 1913, none of which has been paid to the complainants or either of them although duly demanded, as has been the transfer to complainants of said stock.

"Dividends at the rate of 30 cents per share have been declared on the 15th day of April, of May and of June, 1913, and at the rate of 20 cents per share on the 15th day of each month since June, 1913, but no dividend on said 877 shares has been paid since March 18, 1913, to said Mabel R. Hartwell, the dividends on said 877 shares having been retained by said Hawaiian Sugar Company.

"The estate of said Charlotte Lee Hartwell Chater is not indebted to any one; the known heirs are the complainants, Charles H. Chater and Charles Hartwell Chater; and the said Charles H. Chater consents that any interest which he may have in said stock or said dividends may be accounted for and paid to himself as guardian for said Charles Hartwell Chater.

"The market value of stock of the Hawaiian Sugar Company per share was on the 29th day of November, 1909, $36.25, on the 18th day of May, 1910, $58.00, and on March 18, 1913, the day of the filing of this bill, $34.75 per share."

Counsel for the complainants contend that it is shown that

there was a gift to a child recently married from her father which was either a settlement or an advancement, similar gifts having been made to other daughters at the same time; that the gift was complete and irrevocable upon the transfer and delivery of the certificate of stock issued to Carter as "trustee for Charlotte Lee Hartwell Chater;" that the property having passed out of Mr. Hartwell it could return to him only by way of a resulting trust following the consideration or lack of consideration, but as in this case the advancement was supported by love and affection, a good consideration, the trust, following that consideration, should result to the daughter or her estate; that, being a completed gift, the burden is upon the respondents to show an intention that the title to the stock should revest in the donor; that where trusts are engrafted on an otherwise completed gift and any portion of the trust fails the resulting trust is to the donee; that the intent of the donor creating a trust *inter vivos* is to be ascertained and followed as in the case of a will, and that technical rules of law are not allowed to override this intention; that so construed it is clear that the stock was given in trust for Mrs. Chater as the beneficiary, except as modified by the letter, and that Mr. Hartwell did not intend any beneficial interest for himself; that the words "if she shall then be living" refer to Mrs. Chater's enjoyment of the principal and should not be construed to affect the vesting of the gift so as to make it conditional; and that there was an implied gift to Charles Hartwell Chater on the death of his mother before January 1, 1913, he surviving at that time; also that the gift of the dividends was an immediate gift, free of any contingency, which passed to the administrator.

Counsel for the respondents emphasize the facts that the payment of the dividends to Mrs. Chater was postponed until a time posterior to the expected birth of the child, and that there was no express provision for the child. The reason for this, it is urged, was distrust of Mr. Chater on the part of Mr. Hartwell and the latter's intention that the former was not to

share in the trust fund either directly or indirectly as guardian of the child. It is said that Mr. Hartwell undoubtedly contemplated the birth of the child and the possibility that Mrs. Chater might die in child-birth, she being 32 years of age at the time. And it is pointed out that the expressed desire of the donor was that the stock should remain in his family. Further, it is argued that "Judge · Hartwell thought that if Mrs. Chater survived the birth of the child in the autumn and continued to live for the following few weeks until January 1, he could reasonably count on her living a considerable period longer. He took the arbitrary period of three years as a reasonable time within which Mr. Chater would fully and finally show his quality as a husband and father, and within which also would be determined whether Mrs. Chater, who was thirty-two or thirty-three years old, would have any more children and would survive their birth, and whether the children would survive the first perilous stages of infancy. Judge Hartwell therefore provided that the dividends should be paid to Mrs. Chater during the three-year period beginning January 1, 1910, and that if at the end of that period she should be living and should have a child, the principal of the trust fund should be transferred to her or held in trust for her benefit as she might in writing request, or if she should be living and have no child the trustee should hold the stock giving Mrs. Chater the income for life, and at her death transferring the principal to the then surviving sisters and children;" that "It is immaterial whether Judge Hartwell ever thought of the resulting trust to himself. . If he intended that the trust fund should not go to Mr. Chater or the child there is no one to take it and a resulting trust arises as a matter of necessity since the trustee cannot hold for himself;" that the gift of the stock at the end of three years was expressly contingent on the survival of Mrs. Chater at that time, for both the clause "if she shall then be living" and the clause "as she may in writing request" must be stricken out if the gift of principal is to be held vested and

not conditional; that the trustee, at the end of the three-year period, was subject to three alternative instructions each of which necessarily contemplated the survival of Mrs. Chater at that time; that the trust having failed by reason of the death of the beneficiary, there being no gift over that could take effect the trust resulted to the donor; and that the gift of the dividends, being payable in the future, was contingent and lapsed on the death of Mrs. Chater. Respective counsel concede that the object of the court must be to ascertain and give effect to the intention of the donor.

The complainants base their claim to the shares of stock upon three principal contentions: (1) That the gift to Mrs. Chater was a vested one subject to be divested with a gift over to the sisters and their children only upon an event which did not occur; (2) that if there was a resulting trust it resulted to Mrs. Chater's estate; and (3) there was an implied gift to the child in the events which did happen.

The argument that the terms of the letter to Carter, the letter to Chater, the wording of the certificate of stock, and that of the receipts for the dividends, and the surrounding circumstances, all combine to indicate an intention in the mind of Mr. Hartwell to part with the stock absolutely, and to negative the possibility of his having contemplated a resulting trust in himself under the events which occurred is not convincing. Why the payment of the dividends was postponed and why no provision was made for the expected child is left to conjecture unless the theory of counsel for the respondents is to be accepted. But whatever the reason, the fact is that the gift was made in trust and the terms of the trust are to be found in the letter to Carter. That letter is not to be separated from the certificate of stock with which it was enclosed but is to be taken as though its terms were written into the certificate. A study of that part of the letter which defines the trust for Mrs. Chater leads irresistibly to the conclusion that the gift was made contingent upon her being alive on January 1, 1913. This

is the plain meaning of the words used and is the only inference which reasonably can be drawn from the phrases "if she shall then be living," and "as she may in writing request," and the qualifying clause "unless at the end of the three years *she shall have* no child living, in which case the trustee is to hold the stock paying her the dividends *during her lifetime.*" True, as contended, an effectual gift may be made through a trustee, but here there was not an absolute or immediate gift of the stock—the trustee was to hold it for a specified time and then to dispose of it according to the direction of Mrs. Chater, she being alive at that time. The terms of the trust are embodied in an informal letter but the fact that the same letter contained different provisions for other daughters of the donor is potent evidence that the language of the provision for Mrs. Chater was used advisedly. It is argued that the word "if" does not always denote a condition or contingency, and cases are cited applying the rule that in a will the word "if" may be construed as "when" in order to advance the apparent intent of the testator. 21 Cyc. 1725. The cases cited are not in point. There is no reason for supposing, in the case at bar, that construing "if" in the phrase "if she shall then be living" as "when" would accord with the intent of the donor. The word "when" would be an obvious misfit in that phrase, and had it been used it would doubtless have been necessary to construe it as "if" to conform to the intent as shown by the context. In short, we have found no good reason why the language of the letter should not be given its plain and ordinary meaning.

In support of their contention on the second ground counsel for the complainants invoke the well established doctrine that where one buys property in the name of another and pays the consideration money the property will generally be held by the grantee in trust for the one who paid the consideration, but that where the conveyance is taken in the name of the wife or child of the purchaser the presumption is in favor of a gift or advancement and against a resulting trust. We are of the

Chater v. Carter, 22 Haw. 34.

opinion that the doctrine has no application to a case such as this. In the classification of resulting trusts as made by text writers the case at bar would be put in another class. "Resulting trusts may arise in several ways, and may be conveniently divided into the following classes: (1) Where a purchaser pays the purchase money, but takes the title in the name of another; (2) where a trustee or other fiduciary buys property in his own name, but with trust funds; (3) where the trusts of a conveyance are not declared, or are only partially declared, or fail; and (4) where a conveyance is made without any consideration, and it appears from circumstances that the grantee was not intended to take beneficially." Bispham's Principles of Equity (3d ed.), 118. See also 1 Perry on Trusts, Sec. 125. "All true resulting trusts may be reduced to two general types: 1. Where there is a gift to A, but the intention appears, from the terms of the instrument, that the legal and beneficial estates are to be separated, and that he is either to enjoy no beneficial interest or only a part of it. In order that a case of this kind may arise, there must be a true gift so far as the immediate transferee A is concerned, and no valid complete trust must be declared in favor of A or any other person. Such trusts, therefore, generally arise from wills, although they may arise from deeds. If the conveyance be by a deed, the trust will result to the grantor; if it be by a will, the trust will result to the testator's residuary devisees or legatees, or to his heirs or personal representatives, according to the nature of the property and of the dispositions. 2. The second type includes the cases where a purchase has been made, and the legal estate is conveyed or transferred to A, but the purchase price is paid by B." Pomeroy's Equity Jurisprudence (3d ed.) Sec. 1031. The case at bar falls within Bispham's third division and Pomeroy's first. The latter author, subdividing his first type, says, at section 1034, "A second subdivision includes those cases where the owner of both the legal and the equitable estates conveys the legal estate, but does not convey the equitable estate, or

conveys only a portion of it, and a trust in the entire equitable estate in the one instance, or in the part of it undisposed of in the other, will, in general, result to the grantor, or to the heirs or representatives of the testator." And in Hill on Trustees (4th Am. ed.), 179, it is said that "There is no equitable principle more firmly established than that, where a voluntary disposition of property by deed or will is made to a person as trustee, and the trust is not declared at all; or is ineffectually declared; or does not extend to the whole interest given to the trustee; or it fails either wholly or in part by lapse or otherwise; the interest so undisposed of will be held by the trustee, not for his own benefit, but as a resulting trust for the donor himself or for his heir at law or next of kin, according to the nature of the estate." See *King* v. *Mitchell,* 8 Pet. 326; *Bond* v. *Moore,* 90 N. C. 239; *Skellenger* v. *Skellenger,* 32 N. J. E. 659. We hold that there was no resulting trust to Mrs. Chater's heirs, but that the trust resulted to Mr. Hartwell unless there was an implied gift to Mrs. Chater's child.

In connection with the third ground, counsel for the complainants urge that the clause "unless at the end of three years she shall have no child living" necessarily leads to the conclusion that if there was a child living it took. The doctrine of gifts by implication is well established in the law of wills, and counsel argue that as in the interpretation of deeds the object is equally to ascertain the intention of the parties (*Simerson* v. *Simerson,* 20 Haw. 57; *Nahaolelua* v. *Heen,* id. 372) the rule is applicable to deeds and to instruments creating trusts such as the one in hand. Elphinstone, in his Interpretation of Deeds (p. 286) says, "An estate by implication of law has place only by way of use, either by assurances operating under the statute or through the medium of a conveyance to serve the uses, and in devises. By the rules of the common law applicable to deeds, no intention will be presumed unless it is expressed; and consequently no estate will arise unless there be a limitation to pass that estate." See *Dudley* v. *Mallery,* 4 Ga. 52, 64. "Es-

Chater v. Carter, 22 Haw. 34.

tates by implication are not favored.   *   *   *   Courts go much further in stretching the language of a will than of a deed in order to give effect to the intention." *Kellett* v. *Sumner,* 15 Haw. 76, 97. Assuming that the rule is applicable to conveyances creating trusts operating *inter vivos,* we think that the intention to make a gift by implication would be less readily found in such an instrument than in a will where it would be supported by the presumption against intestacy. And in construing wills, even, the probability that the testator intended to make the devise or bequest implied must be so strong that a contrary intention could not reasonably be imputed to him. 40 Cyc. 1390; 1 Underhill on Wills, Sec. 463. "If a reading of the whole will produces a conviction that the *testator must necessarily have intended* an interest to be given which is not bequeathed by express and formal words, the court may supply the defect by implication, and so mould the language of the testator as to carry into effect, so far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." *Metcalf* v. *Framingham Parish,* 128 Mass. 370, 374, quoted with approval in *Robison* v. *Portland Orphan Asylum,* 123 U. S. 702, 707. Where a partial or incomplete trust is created by an instrument other than a will the donor being alive is in a position to make supplementary provisions to take effect during his lifetime, or by will to take effect upon his death. It appears here that the birth of a child to the primary object of his bounty was anticipated by the donor and evidently was in his mind when he penned the terms of the trust. The language of the trust instrument must be read with a view to the circumstances under which it was written. The letter was written with the fact in mind that a child was actually in gestation with the probability that in due course it would come into being. Yet, although contingent provision was made in the same instrument for the children of other daughters, there was no provision for any child of Mrs. Chater. The natural inference to be drawn is that provision for the expected child was

intentionally omitted.    Under these circumstances the court is
not permitted to find that there was a gift by implication.

The contention as to the dividends is that the provision was
in terms a present gift; that it was a completed gift to Mrs.
Chater—not a mere direction to pay at a future·time; that it
vested immediately; and that the right to the dividends for three
years passed to Mrs. Chater's administrator.    Counsel for the
respondents think that because the trust as to the shares failed
by reason of the death of Mrs. Chater, the gift of the dividends
fell with it, and that it was improbable that Mr. Hartwell in-
tended that the income should be paid to Mrs. Chater's adminis-
trator after her death and after the gift of the principal had
lapsed.    No authority exactly in point has been found.    Most
of the cases cited in the briefs are of testamentary dispositions.
The provision contained in the letter was neither for a legacy
nor an annuity.    Here again it is a matter of ascertaining from
the trust instrument and the surrounding circumstances the in-
tention of the donor.    It is clear that Mrs. Chater was the chief
object of the bounty. ˙ If she had lived and had a child at the
end of the three-year period the shares with the right to the
dividends thereon would have been hers absolutely.    There was
no provision for the child whose birth was expected, nor for any
children that might have been born to Mrs. Chater after Janu-
ary 1, 1913, had she lived.    The direction as to the dividends
was in general terms and no words of limitation were used.
Payment was not to begin at once.    We do not agree with the
circuit judge that the failure to make the dividends payable at
once was an oversight, nor do we think that the fact that the
dividends for the months from April to August were sent to
Mrs. Chater affects the construction to be given the terms of
the letter.    There is an absence of any satisfactory evidence of
an intention that in the event of the death of Mrs. Chater the
dividends should be paid to her estate.    In case of doubt the in-
terest should be held to be vested rather than contingent but we
think upon the whole that it sufficiently appears that the gift was

intended to be solely to Mrs. Chater personally, was contingent upon her being alive at the time the direction to pay was to take effect, and lapsed by reason of her death before that time.

The decree appealed from is affirmed.

*D. L. Withington* and *A. L. Castle (Castle & Withington* on the brief) for complainants.

*R. B. Anderson (Frear, Prosser, Anderson & Marx* on the brief) for respondents.