S. Prescott Fay & another, trustees, *vs.* Samuel Prescott
Fay & others.

Barnstable.    March 8, 1956. — June 13, 1956.

Present: Qua, C.J., Ronan, Wilkins, & Counihan, JJ.

*Devise and Legacy,* Power, Income beneficiary. *Power. Probate Court,*
Petition for instructions, Decree. *Equity Pleading and Practice,* Suit
for instructions, Decree.

Under a will, read as a whole, establishing a trust to pay income from a
share of the principal to each of the testator's children during the
child's life and upon his death to pay such income to his issue as he
should appoint by will or equally in default of appointment, or, if he
should die without issue, as he should appoint by will among the other
children of the testator and the issue of any deceased child or in default
of appointment equally among the other children and the issue of
any deceased child by representation, income appointed by the will of
one of the children who died without issue to his brother became
merged with the income already being received by the brother and sub-
sequently, upon the brother's death, became payable with such other
income to his issue equally in default of an appointment in his will.
[321]
Provisions of a testamentary trust for the payment, upon the death of
one of the income beneficiaries, of his share of the income among a
certain class as he by will should "direct" or otherwise in default of
"direction" gave him a special power of appointment.  [321]
A decree of a Probate Court upon a petition for instructions by testa-
mentary trustees, to the effect that each of life beneficiaries of income
of the trust had a power by will to appoint income among the members
of "designated classes" should have defined who such classes were
according to the will establishing the trust.  [321]

Petition for instructions, filed in the Probate Court for
the county of Barnstable on June 2, 1954.

The case was heard by *Sparrow, J.*

*Alfred Gardner,* stated the case.

*Melville F. Weston,* for Johanna Fay Davis and others.

*Carl J. Marold,* for executors of the will of William
Rodman Fay.

*Frederick H. Free, Jr.,* (*John W. Huse* with him,) for executrix of the will of Joseph S. Fay, 3d.

*Robert W. Meserve,* (*Edward C. Mendler, Jr.,* with him,) for Hope Fay Neville and another.

*Paul B. Sargent,* for Samuel Prescott Fay and others.

*George M. Poland,* guardian ad litem, submitted a brief.

COUNIHAN, J.   This is an appeal from a decree of the Probate Court upon a petition for instructions by the trustees of a trust created under the will of Joseph S. Fay, Junior, as to the persons to whom part of the income of said trust should be distributed following the death on February 25, 1954, of William Rodman Fay, a son of Joseph S. Fay, Junior.

The appellants are Margaret W. Fay, executrix of the will of Joseph S. Fay, Third, a deceased son of Joseph S. Fay, Junior; Johanna Fay Davis, a daughter of Joseph S. Fay, Junior, and her children; and Gertrude Helen Fay and Charles F. Simmons, executors under the will of William Rodman Fay.   The appellees who are Hope Fay Neville and Elsie Fay Hawtin, surviving children of William Rodman Fay, and Samuel Prescott Fay and his children are satisfied with the decree appealed from.   A guardian ad litem who was appointed to represent minors and all persons not ascertained and not in being did not appeal.

The facts which are not in dispute are as follows: Joseph S. Fay, Junior, hereinafter called the testator, died on February 4, 1912, leaving a will dated May 5, 1911, which was duly allowed.   The material parts of this will are: "Eighth: All the rest and residue of my property, real, personal and mixed, of whatsoever nature and wheresoever situate, I give, devise and bequeath to my trustees above named, and their successors, in trust for the uses and purposes herein declared of and concerning the same. . . . [c] (1) They shall divide the same into as many portions or parts as there may be children of mine living at the time of my decease, or who have died before me leaving lawful issue. living at my death, setting apart for the said issue of each child of mine so deceased, as representatives of their de-

ceased parent or parents, the share or shares its or their parents would be entitled to if living." For convenience of reference the first three sentences of article Eighth (c) (2) are herein designated as paragraphs: I. "My trustees shall hold and manage the aforesaid portions or parts, the accretions and additions thereto, for and during the lives of my children and *of the last survivor of my children* and for twenty years thereafter, or if one of my children shall have lawful issue living at my death, for and during the lives of my children and of such issue, living at my death, and ·of the last survivor of my children and of such issue and for twenty years thereafter, and invest and reinvest the same, collect the rents and income thereof and add each year ten per cent of the annual income derived from each share and the accretions and additions thereto, to the principal of the share from which such net income is derived, and pay the balance of said net income, quarterly or oftener, as convenient, to my said children and to the lawful issue, living at my death, of any child who has died before me, for and during their respective lives, the balance of net income going to issue, if more than one, shall be divided equally between them by representation" (emphasis supplied). II. "And upon the death of each of my children and of each of the lawful issue of a deceased child, to continue to hold and manage the portion or part then held *by them for the child or issue* so dying and after adding each year to principal the ten per cent of the net income, as aforesaid, to pay the balance of the net income, quarterly or oftener as convenient, to *the lawful issue of such child, him or her surviving, in such proportion as such child shall by will direct, and in default of direction, in equal shares, and if the portion or part is held for issue of a child,* to pay the proportion of the balance of net income to which the one of the issue dying was *entitled to his or her lawful issue him or her surviving, in such proportions as he or she shall by will direct, and in default of direction, in equal shares*" (emphasis supplied). III. *"And if any of my children or their issue, shall die without lawful issue him or her surviving, my trustees shall divide the balance*

*of net income among such of his or her brothers and sisters, being my descendants, and the lawful issue of any such deceased brother or sister, and in such proportion as he or she shall by will direct, and in default of direction equally among his or her brothers and sisters, being my descendants, and lawful issue of any such deceased brother or sister, by representation,* and if there is no such brother or sister or lawful issue of a deceased brother or sister, being my descendants, then among such of his or her uncles and aunts and their lawful issue by representation, as are the direct descendants of my father" (emphasis supplied).

Article Eighth (c) (3) of this will reads in part: "I further direct that if, at any time, *any of my sons or any male issue of my sons,* shall not have some fixed or definite occupation, my trustees shall pay him, out of the income to which he is entitled, only one half thereof for the period that he is without such occupation, the balance of the income to be added to the principal of his share. This restriction shall not apply, if such son or *male issue is unable,* for any sufficient cause, to have such occupation . . ." (emphasis supplied).

Article Eighth (c) (4) reads: "Upon the termination of the trust by the limitation of time aforesaid, my trustees shall convey and transfer the principal of each original part or portion with all accretions and additions thereto, to those persons entitled to the balance of the income thereof, to each the proportion in which they are entitled to income, free and discharged of all trusts."

The testator died leaving a widow, Grace Ely Fay (his second wife), and four children: Joseph S. Fay, Third, sometimes hereinafter called Joseph, Third, then about thirty-nine years old, Samuel Prescott Fay, sometimes hereinafter called Prescott, then about twenty-seven years old, William Rodman Fay, sometimes hereinafter called Rodman, then about twenty-six years old, and Johanna Fay, a daughter by his second wife, then about three years old, sometimes hereinafter called Johanna. Another son, Allen M. Fay, died before the death of the testator, leaving no

issue. Pursuant to the provisions of article Eighth (c) (1) of this will, the trustees divided the residue of the estate of the testator into four equal shares, and thereafter, subject to the deduction of ten per cent of the income, paid the income of one share to each of the four children.

Joseph S. Fay, Third, died on April 12, 1939, leaving a widow Margaret W. and no issue. By his will dated June 12, 1912, which was duly allowed, he provided among other things, "Inasmuch as my late father, Joseph S. Fay, Junior, of Falmouth, in the County of Barnstable and said Commonwealth, by his last will duly proved and allowed March 12, 1912, gave me power to direct by my will how income from certain trusts created by his will should be paid after my decease, I now direct the trustees under my said father's will, in case I die without lawful issue me surviving, to divide so much of the income from the trusts of said will as I can direct the disposal of by this my will in equal shares between my said two brothers, Samuel Prescott Fay and William Rodman Fay; and in case either or both of said brothers die before me leaving lawful issue surviving me, I direct said trustees to pay the share of said income to which the brother so dying would have been entitled hereunder had he survived me to his issue by right of representation in equal shares if more than one; and in case one of my said brothers dies before me without issue and the other dies before me leaving issue me surviving, then I direct said trustees to pay the whole of said income to such issue in equal shares by representation if more than one; and if only one of my said two brothers survive me and there is no issue of the deceased brother, then I direct said trustees to pay the whole of said income to the surviving brother." Margaret W. Fay was duly appointed executrix of this will. Prescott, Rodman and Johanna were all living at the death of Joseph S. Fay, Third.

Thereafter the trustees under the will of the testator divided and reallocated the share of income which Joseph, Third, had been receiving and paid one half of such share of income to Prescott and Rodman each, so that Prescott

and Rodman each received thereafter three eighths of the income of the trust, and Johanna received one quarter or two eighths of such income, all subject to the ten per cent reduction provision.

Rodman died on February 25, 1954, leaving a will which was duly allowed. His widow, Gertrude Helen Fay, and Charles F. Simmons were appointed executors of this will. Surviving Rodman were his widow and two children, his lawful issue, Hope Fay Neville and Elsie Fay Hawtin. In his will Rodman expressly omitted to exercise his power of appointment over the one-fourth share of the income given him in the will of the testator or over the one-eighth share of income which he acquired under the will of Joseph, Third.

In the petition before us, the trustees seek instructions as to the following: "1. That this court instruct them to whom and in what proportions they should pay one half of the income from the share of the principal originally set apart for Joseph S. Fay 3rd, such half having been appointed by Joseph S. Fay 3rd to William Rodman Fay and having been paid to William Rodman Fay until his death. 2. That this court instruct them to whom and in what proportions they should pay the income from the share of the principal originally set apart for William Rodman Fay; and 3. That this court instruct the parties to this petition whether each person enjoying a life interest in the income from a share of the principal of the trust, whether as an appointee of a former life tenant, or in default of appointment by a former life tenant, or otherwise, has in turn a power to appoint by will to members of designated classes a life interest in that share of the income of the trust being paid to such person."

The judge ordered the entry of a decree which reads: "1. The trustees should pay one half of the distributable income from the share of the principal originally set apart for Joseph S. Fay, 3rd, which one half of said income was directed by Joseph S. Fay, 3rd, to be paid to William Rodman Fay, to the issue of said William Rodman Fay by right of representation, such issue at his death being

Hope Fay Neville and Elsie Fay Hawtin, the two children of William Rodman Fay. 2. The trustees should pay the distributable income from the share of the principal originally set apart for William Rodman Fay to the issue of said William Rodman Fay by right of representation, such issue at his death being Hope Fay Neville and Elsie Fay Hawtin, the two children of William Rodman Fay. 3. Each person enjoying a life interest in the income from a share of the principal of the trust, whether as an appointee designated by a former life tenant or in default of the exercise of a power of direction, or otherwise, except any person who has made a valid renunciation or release of the power of direction, has in turn a power of direction which he may exercise by will in favor of members of designated classes allocating to them a life interest in that share of the income of the trust being paid to him."

The purpose of filing this petition for instructions is to resolve the uncertainty as to who is entitled to the one-eighth share of the income of the trust set up in the will of the testator appointed to Rodman in the will of Joseph, Third, after the death of Rodman, who died leaving a will in which he exercised no power of appointment. No one disputes the effect of the will of the testator upon the disposition of the shares of one fourth of income given to Prescott, Rodman, and Johanna each in the will of the testator.

The contentions of the appellants appear to be as follows: A. By Johanna and her children that, following the death of Rodman, this disputed share should be payable until the termination of the trust, one third to Prescott, one third to Johanna, and one third to be divided equally between the two children surviving Rodman and likewise to their respective legal representatives in the event of their respective deaths during the term of the trust. In this aspect of the case they argue in effect that no power of appointment whatever was conferred by the will of the testator as to this disputed share of income upon any person other than an original taker of a life estate in the income, namely, Joseph,

Third. They further assert that this disputed share of income was appointed to Rodman by the will of Joseph, Third, for life only, and that, in default of appointment by Rodman, it reverts back and should be divided among Prescott (one third), Johanna (one third), and Rodman's issue (one sixth each).

They suggest in the alternative that one fourth of such share be paid to Prescott and Johanna each, one fourth be divided between the issue of Rodman, and one fourth be paid to the executrix of the will of Joseph, Third.

B. By the executors of the will of Rodman that the disputed one-eighth share of income be paid to the estate of Rodman from the death of Rodman to the termination of the trust, it having been appointed to Rodman by the will of Joseph, Third. They argue that Rodman by such appointment acquired in substance a fee in such income and not merely a life estate.

C. By the executrix of the will of Joseph, Third, that said income from the death of Rodman to the termination of the trust "passes as intestate property" of the testator to "his heirs at law" determined as of the time of the death of the testator in 1912. She argues that the will of the testator did not make a complete disposition of his estate particularly in respect to this disputed share of income so that it became an intestacy and should be divided among the widow and children of the testator.

The appellees Prescott and his children, and Hope Fay Neville and Elsie Fay Hawtin are satisfied with the decree and argue that it be affirmed.

It cannot be gainsaid that the will of the testator is loosely drawn and somewhat confusing. There is a paucity of language to express clearly and without the possibility of slight doubt the intention of the testator in article Eighth (c) of his will with respect to the contingency which has occurred and which is the subject matter of the present controversy. The testator clearly and without ambiguity provided for the disposition of the one-quarter shares of the income of the trust which went directly to his children.

As we have already said, it is conceded by all the parties that, as to the disposition of the one-fourth share of income which each of his children received directly under his will, paragraph numbered 2 of the decree is correct. The difficulty arises out of the provision of his will in article Eighth (c) (1) referring to "children of mine . . . who have died before me leaving lawful issue living at my death" and the fact that none of his children had died before him leaving issue.

Counsel for the appellants have ably presented their views and we have carefully considered them and have analyzed the cases cited in support thereof. Inasmuch as the proper disposition of this interest seems plain to us we do not deem it necessary to refute in detail each contention presented.

The leading case of *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, sets forth the general tests to be applied in the construction of wills in which a contingency arises which does not appear to have been expressly provided for. It was there said at page 374, "The decision of this question doubtless depends upon the intention of the testator, as manifested by the words that he has used, and an omission to express his intention cannot be supplied by conjecture. But if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." This case has been consistently followed by this court down through the most recent case of *Balcom* v. *Balcom*, 333 Mass. 599.

We are of opinion that the will of the testator, read as a whole, manifests a dispositive scheme to which we may give effect, notwithstanding the lack of explicit language. It seems plain that the primary interest of the testator was to provide for his issue by way of income during their lives

for the maximum period permitted by the rule against perpetuities. He did this by creating a trust with life interests in income (subject to the ten per cent reduction) going first to his children, the primary objects of his bounty, and then to each successive generation *per stirpes* until the termination of the trust. Nowhere in the will is any intention expressed that any interest in the income is to pass outside the direct line of his descendants unless and until such direct line is exhausted. This is apparent from the provision of the will in article Eighth (c) (3) which indicates an intention on the part of the testator that his sons or *their male issue* should not become wastrels. This appears also clear from the provision that a child or the issue of a deceased child of the testator might appoint the income allocated to them or either of them "in such proportion" as "he or she shall by will direct." This seems to us to be a recognition of the economic need of such child or *issue* as the occasion arises.

It seems plain to us that the provision of what we have called paragraph III of article Eighth (c) (2) of the will of the testator is in furtherance of the testator's scheme of disposition. He desired and intended that, when one of the child designated stirpes came to an end due to the death of one of his children without issue, such life interests in the income should continue to be paid to his other children or to their issue.

We think that a proper construction of the will of the testator requires a holding that the testator created in each of his children and the issue of each a special power of appointment by which one of them dying without issue might appoint his share of the income of the trust among his brothers or sisters. This Joseph, Third, did. He appointed his share to his brothers Prescott and Rodman to be divided equally between them and omitted to give Johanna any of this share, as he had a right to do. Apart from giving Johanna something, Joseph, Third, had no power under the will of the testator to make any disposition of his share other than he did.

When this happened the one-eighth share of income which Prescott and Rodman each received became merged with the one-fourth share they each originally received under the will of the testator. The disputed one-eighth share which is the subject of this controversy lost its identity as such and the combined three-eighths share then in possession of Rodman for life became subject to the provisions of the will of the testator to be disposed of on the death of Rodman in the same manner as the one-fourth share he originally received, as provided in what we have called paragraph II of article Eighth (c) (2) of the will. We are therefore of opinion that the decree so far as it affects the disputed one-eighth share must be governed by the same rule of construction adopted in paragraph numbered 2 of the decree, about which none of the parties complains.

In passing we deem it appropriate to say that there is no merit in the suggestion of counsel for the appellees Hope Fay Neville and Elsie Fay Hawtin that there is distinction between a "power of direction" and a "power of appointment" in the will of the testator. No case involving this distinction has been brought to our attention nor have we been able to find one. We are of opinion that our decided cases hold that this court has permitted a testator to create a variety of special powers of appointment. We think that the directions in the will of the testator constituted special powers of appointment. See *Hooper* v. *Hooper*, 203 Mass. 50; *Greenough* v. *Osgood*, 235 Mass. 235, 240–241; *North Adams National Bank* v. *Commissioner of Corporations & Taxation*, 268 Mass. 42; *Old Colony Trust Co.* v. *Richardson*, 297 Mass. 147; *Welch* v. *Morse*, 323 Mass. 233.

On the whole we think that paragraph numbered 3 of the decree is essentially correct. The words "designated classes" may, however, prove to be ambiguous. We think it would be desirable to clarify these words by spelling out in the decree who such "designated classes" are. We are of opinion that the words mean that a lineal descendant of the testator, should he or she die with issue, may appoint

the share of income he or she had been receiving to such of his or her issue and in such proportions as he or she may by will direct or in default of appointment to such issue equally; if he or she dies without issue then to his or her brothers or sisters or any of them in such proportion as he or she may by will direct or in default of appointment equally among his or her brothers and sisters, being descendants of the testator, and to the lawful issue of a deceased brother or sister by right of representation; and if there is no such brother or sister or lawful issue of a deceased brother or sister, being descendants of the testator, then among such of his or her uncles and aunts and their lawful issue by right of representation as are the direct descendants of the father of the testator.

The decree of the Probate Court as so modified is affirmed. Reasonable allowances for costs and expenses of these proceedings may be allowed to all the respondents before us or their counsel in the discretion of the Probate Court. The compensation and expenses of the trustees are properly the subject of their subsequent accounting.

*So ordered.*