New England Trust Company, trustee, *vs.* Edith
Bremer Faxon & others.

Norfolk.   October 5, 1961. — December 5, 1961.

Present: Wilkins, C.J., Spalding, Cutter, Kirk, & Spiegel, JJ.

*Power.   Trust,* Construction, Power, Remainder, Identity of beneficiary.
*Devise and Legacy,* Power, Remainder, Residue, Intestacy, Identity of
beneficiary.   *Release.*

Under an irrevocable trust indenture framed with precision directing the
trustee to pay the income to the settlor during her life and at her death
to transfer the trust fund "to such person or persons . . . as . . . [the
settlor] may appoint . . . by any last will . . . But in default of
such appointment . . . then to transfer . . . the same to . . . [the set-
tlor's] issue . . .   But if no . . . issue . . . survive her, then to trans-
fer . . . [the trust fund] to and among the same persons who would
have been entitled thereto if . . . [the settlor] had held the same in her
own right at the time of her decease and had died unmarried and these
presents had never been made," the gift over upon the settlor's death
unmarried and leaving no issue and without having exercised the power
of appointment was intended to be, not to those persons who would take
the settlor's property by intestacy irrespective of whether she died
testate or intestate, but to her heirs if she should die intestate, or, if she
should die testate, to those persons, if any, who under her will would
have taken the trust fund had she owned it outright or, in case there
were no such persons, then to her heirs as though she had died intestate.
[274–275, 280]
Under a will executed in 1947 providing that certain small gifts should
"be deemed to be in exercise of the [testamentary] power of appoint-
ment" over a trust fund reserved by the testatrix in an irrevocable trust
indenture executed by her in 1905, that in a stated contingency death
taxes should be paid from the 1905 trust fund, and that the testa-
trix exercised her power of appointment with respect to 36/60 of the
balance of the trust fund remaining after such partial appointments,
"specifically not exercising . . . [the] power over the remaining" 24/60
of the balance, and providing in the residuary clause that she "spe-
cifically exclud[ed] any property over which . . . [she had] a power
of appointment under" the trust indenture, and containing no explicit
disposition of such 24/60 interest, the 24/60 interest was excluded from
the operation of her will and no legatees thereunder, as such, would
have taken the 24/60 interest within a provision of the trust indenture
giving it in certain circumstances to "the same persons who would have
been entitled thereto if . . . [she] had held . . . [it] in her own right
at the time of her decease."   [275–276, 280–281]

Where it appeared upon a petition for instructions by the trustee under an irrevocable trust indenture executed in 1905 that in 1947 the settlor executed a will exercising as to part of the trust fund a testamentary power of appointment over the trust fund reserved by her in the trust indenture but carefully excluded from the operation of her will the balance of the trust fund, that immediately after execution of her will the settlor executed a release of "that portion" of the power of appointment "the exercise of which . . . [she had] not provided for in . . . [her] will," and that upon her death in 1958 her probate estate was subject to the Federal estate tax and the trust fund was substantially larger in amount than the probate estate, the release should be construed as designed to deprive the settlor, after its execution, of any testamentary control over the devolution of such excluded balance of the trust fund in order to avoid payment of Federal estate taxes on that balance even though it was not explicitly mentioned in the release. [276–277, 281–282]

Under an irrevocable trust indenture construed by this court as providing that in default of appointment under a testamentary power of appointment reserved by the settlor over the trust fund, and in default of issue of the settlor surviving her, the trust fund at her death should go to those persons, if any, who under her will would have taken the trust fund had she owned it outright at her death or, in case there were no such persons, to her heirs, where she died without issue and there was not only no appointment of a portion of the trust fund by her in her will but that portion was excluded from the operation of the will entirely so that no legatees thereunder, as such, would have taken it had she owned it outright at her death, her heirs took it and took it directly from the trustee and not through her estate. [283–284]

PETITION, filed in the Probate Court for the county of Norfolk on December 7, 1959.

The case was heard by *Hickey, J.*

*Augustus W. Soule, Jr.,* stated the case.

*Richard Wait,* for Harvey H. Bundy, executor.

*John E. Rogerson,* (*Ralph S. Brown, Jr.,* with him,) for Edith Bremer Faxon and others.

CUTTER, J. This is a petition for instructions by the trustee under an irrevocable[1] trust indenture of Sarah F. Bremer, dated July 27, 1905. The 1905 indenture directed the trustee to pay the income to Sarah during her life and at her death to transfer the trust fund "[A][2] to such per-

---

[1] See *Sands* v. *Old Colony Trust Co.* 195 Mass. 575, 577, 580; *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 464–465; *Commissioner of Internal Revenue* v. *Bateman,* 127 F. 2d 266, 269 (1st Cir.). Cf. *Ware* v. *Gulda,* 331 Mass. 68, 71–72.

[2] For convenience in referring to particular parts of the passage quoted from the 1905 indenture, capital letters in brackets have been inserted in the passage.

son or persons . . . as . . . Sarah may appoint . . . by any last will . . . . [B] But in default of such appointment . . . then to transfer . . . the same to . . . [Sarah's] issue . . . . [C] But if no child of . . . Sarah nor issue of any survive her, then to transfer . . . [the trust fund] to and among [D] the same persons who would have been entitled thereto [E] if . . . Sarah had held the same in her own right at the time of her decease and had died unmarried [F] and these presents had never been made.''

Sarah died on July 6, 1958, unmarried and leaving no children or issue of deceased children. Sarah's last will, admitted to probate, had been executed on December 31, 1947. Article 22 gave the residue, ''specifically excluding any property over which I have a power of appointment under'' the 1905 indenture, in ''equal shares . . . to such of the following four persons [her nieces, Edith, Mabel, Ruth, and Barbara] . . . as shall survive me, but if any of them shall predecease me leaving issue surviving me, such issue shall take by right of representation . . . .''

All four named nieces did survive Sarah. Edith, Mabel, and Ruth (daughters of Sarah's then deceased brother, S. Parker Bremer) and the settlor's then surviving brother, J. Lewis Bremer (who has died since the settlor's death and whose executor is the appellant), were the settlor's heirs at law at the time of her death. Barbara is described elsewhere in the will as the adopted daughter of J. Lewis Bremer.

Sarah by her 1947 will (arts. 20, 21, and 23) exercised in part her testamentary power of appointment reserved in the 1905 indenture (see clause [A] of the quotation from that indenture, supra). In art. 20, Sarah provided that certain small gifts made earlier in her will should ''be deemed to be in exercise of the power of appointment.'' By art. 21, Sarah directed that in a stated contingency certain death taxes should be paid from the 1905 trust fund. By art. 23, Sarah exercised the power with respect to 36/60 ''of the balance of the'' 1905 trust fund remaining after the appointments by arts. 20 and 21, ''specifically not exer-

cising . . . [the] power over the remaining . . . 24/60
. . . of . . . [the] balance.''

On the same day that she executed her 1947 will, Sarah
executed and delivered (in a manner complying with G. L.
c. 204, §§ 27–36, inserted by St. 1943, c. 152; see Newhall,
Settlement of Estates [4th ed.] § 370) a partial release of
her testamentary power reserved in the 1905 indenture.
In the release she recited (a) the precise terms of the 1905
general testamentary power (see clause [A] quoted, *supra*),
the only relevant 1905 trust provision within any usual con-
cept of a power of appointment, and (b) that she desired
to relinquish that power ''with respect to those portions of
the [trust] property . . . over which, in my . . . will . . .
I do not provide for exercising said power and control.''
In the operative provision of the release,[3] Sarah irrev-
ocably released ''that portion of said power and control,
the exercise of which I have not provided for in my . . . last
will . . . a copy of which is attached . . . and . . . cove-
nant[ed] with . . . [the trustee] that . . . [she would] al-
ways recognize the validity of this release and . . . never
attempt to exercise that portion of said power and control
released hereby, in whole or in part.''

It was stipulated that at Sarah's death the value of the
gross estate coming into the hands of Sarah's executors

---

[3] The partial release was undoubtedly to avoid Federal estate taxes with
respect to the 24/60 interest, which in 1947 it seemed might be imposed in the
event of Sarah's death after July 1, 1948, if the interest remained subject to
an unreleased general power of appointment. See Int. Rev. Code of 1939,
§ 811 (f), as amended or affected by Rev. Act of 1942, §§ 403, 452(c), 56 Stat.
942, 952. Application of the 1942 amendments to pre-1942 powers was post-
poned by a series of annual extensions, the latest of which then was to July 1,
1948. See Pub. Law (80th Cong.) 112, 61 Stat. 178; Reg. 105, § 81.24;
26 C. F. R. p. 6882 et seq. (1944), as amended by T. D. 5577, 26 C. F. R.
(1947 Supp.) p. 4195. In 1947, the probable freedom of the 24/60 interest
in this pre-1931 trust from estate tax (see Reg. 105, § 81.18 [a], 26 C. F. R.
p. 6875 [1944]; see Sen. Rep. No. 685, 83d Cong., 1st Sess., U. S. Code Cong. &
Adm. News 1953, pp. 2423, 2429–2430) might have been imperiled either
(a) by any exercise in Sarah's will of any conceivable power to influence the
devolution of the 24/60 interest, or (b) by the continued possession of such a
power. See Casner, Estate Planning—Powers of Appointment, 64 Harv. L.
Rev. 185, 204–206; Craven, Powers of Appointment Act of 1951, 65 Harv. L.
Rev. 55, 58–60. In 1947 it could not be known whether there would be a fur-
ther annual suspension beyond July 1, 1948, of the application of the 1942
amendments to pre-1942 powers. The provisions, now found in Int. Rev.
Code of 1954, 26 U. S. C. (1958) §§ 2041, 2514, were not enacted until 1951.
See Pub. Law (82d Cong.) 58, 65 Stat. 91–95. See Sen. Rep. No. 382, 82d
Cong., 1st Sess., U. S. Code Cong. & Adm. News 1951 at pp. 1530, 1531–1532.

(i.e. her probate estate) was approximately $140,000. The value of the corpus of the 1905 trust on that date was substantially larger.

The petition sought instructions about the following matters, and the answers summarized below were given by the decree of the Probate Court. (a) Did Sarah irrevocably release a power of appointment over any part of the 1905 trust fund? The decree stated that Sarah, by the 1947 release, effectively released her power of appointment with respect to 24/60 of the balance of the trust fund remaining after giving effect to arts. 20 and 21 of her 1947 will (but, of course, excluding the 36/60 of the balance appointed by art. 23). (b) Did Sarah fail to exercise a power of appointment over any portion of the 1905 trust fund? The decree stated that the 24/60 of the balance (mentioned above) of the principal of the 1905 trust fund passed in default of appointment directly to the persons named as Sarah's residuary legatees in art. 22 "and did not pass to them through . . . [Sarah's] probate estate." (c) To whom should the 24/60 of the balance be distributed? The decree provided that this portion of the 1905 trust fund should be distributed "equally among [Sarah's nieces] Edith . . . Mabel . . . Ruth . . . and Barbara."

In answers to other questions, the decree provided that this distribution should be made, not through Sarah's executors, but directly to the beneficiaries, and that the portion of the 1905 trust fund passing by appointment under art. 23 of Sarah's will and the portion passing in default of appointment "should each be determined only after payment from the entire trust fund of all counsel fees and other expenses of administration and distribution."

The executor of the will of Sarah's brother, J. Lewis Bremer, appealed. He had stated in his answer that he was not concerned with the first question described in (a), *supra,* but contended (1) that Sarah had failed to exercise the power with respect to 24/60 of the balance of the 1905 trust fund, and (2) that this part of the fund should be distributed to Sarah's heirs and those claiming in the right of any such heir, with the consequence that he, as executor of

J. Lewis Bremer's will, would receive one half of this 24/60 of the balance of the fund.

1. One crucial question is the proper interpretation of the gift made in the 1905 indenture in default of appointment. See clauses [B] through [F] in the trust provision quoted at the beginning of this opinion. This gift in default immediately follows the general testamentary power of appointment (clause [A]), and first provides a gift to any surviving issue of Sarah by right of representation. The most important words (see clauses [C] through [F]) are those which were to take effect if Sarah should not be survived by any child or other issue, in which event the trust fund, so far as not appointed, was to go "to and among [D] the same persons who would have been entitled thereto [E] if . . . Sarah had held the same in her own right at . . . her decease and had died unmarried [F] [4] and these presents had never been made."

The present difficulty arises because the wording of the default gift (clauses [D]–[F], inclusive) is ambiguous. The ultimate distributees are not limited by express language to the persons (other than a husband) who would take as Sarah's heirs if she had died intestate. Such a specific provision is not unusual in an ultimate remainder gift of this type. Ordinarily, the reason for such an ultimate gift (frequently made to the settlor's or a life beneficiary's "heirs at law," or in terms of similar import) is that described by Mr. Justice Holmes in *Whall* v. *Converse*, 146 Mass. 345, 348, viz., "that the testator [or settlor] has exhausted his specific wishes by the previous limitations, and is content thereafter to let the law take its course." See *Second Bank-State St. Trust Co.* v. *Weston*, 342 Mass. 630, 634.

Because Sarah died testate, the language of her ultimate gift in default of appointment, taken literally and by itself, can be interpreted as describing the persons who would take the residue of her estate under her will (art. 22). If

---

[4] The 1905 indenture provided for the possibility that Sarah might be married thereafter, not only by the provision in the default gift itself but also by various safeguards against interference by any future husband with Sarah's interest or with her power of appointment.

resort to the rules of intestate succession to determine the ultimate distributees was in fact intended, it would have been prudent, and perhaps natural, for the 1905 draftsman to have inserted (at point [F] in the gift) the words "and intestate." The meaning would then have been wholly clear.

Two considerations tend to support the view that the ultimate default gift was in effect to Sarah's heirs, i.e., to those who would take her property if she were to die intestate. *First,* the words (at point [D]) "the same persons who would have been entitled thereto" are similar to words which have been regarded as describing "heirs." See Restatement: Property, § 305, comment c; Powell, Real Property, § 372 at p. 196. Cf. *O'Farrell* v. *American Trust Co.* 149 Cal. App. 2d 691, 700–701. *Second,* the ultimate gift follows Sarah's general testamentary power of appointment, and, if the decree in the Probate Court is correct, in a sense duplicates it by providing, in the default gift itself, a second opportunity[5] for Sarah to affect the disposition of the trust property by the residuary article of her will. It can be argued that the draftsman intended no such redundancy.

In 1905, when the trust was created, there was not so clearly a duplication of the provisions of the prior general testamentary power of appointment and of this ultimate gift (interpreted as in the Probate Court decree), based on the possibility that the eventual donees might be determined by Sarah's will. It was then possible that they would turn out to be Sarah's issue or, if she left no will, the persons taking her estate by intestacy. Only if she died testate and without issue would any redundancy become obvious. This circumstance, of course, reduces the weight to be given to the redundancy as bearing upon interpretation.

---

[5] The general testamentary power of appointment, so far as not released, would have been exercised by any general residuary article of Sarah's will which did not exclude the trust property from its operation (absent any affirmative contrary intention in the will). See *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 365–367; *Second Bank-State St. Trust Co.* v. *Yale Univ. Alumni Fund,* 338 Mass. 520, 524.

On balance, these considerations lead the author of this opinion to the view that the ultimate default gift was intended for the persons who would take Sarah's property by intestacy. A majority of the court, however, hold that the ultimate default gift was intended to be (a) to Sarah's heirs (excluding her husband if any) if she should die intestate or (b) to those persons, if any, who would have taken this property under her will if she had died testate and owned this property outright, or if there were no such persons, then to her heirs as if she had died intestate. This view is supported by the circumstances that this result would be achieved by giving to the words of the ultimate gift their usual legal meaning and that the whole 1905 indenture seems to have been framed with precision, thus leaving no room for implying any additional words as in *Metcalf* v. *First Parish in Framingham,* 128 Mass. 370, 374, *Knowlton* v. *Forbush,* 322 Mass. 703, 705, *Balcom* v. *Balcom,* 333 Mass. 599, 601–602, and *Fay* v. *Fay,* 334 Mass. 311, 319. Cf. *Loring* v. *Clapp,* 337 Mass. 53, 60–61. The majority find nothing in the default provision, or in the 1905 indenture viewed as a whole, indicating that the words in the ultimate gift should be interpreted differently from what a strict analysis of their ordinary meaning would suggest. See *Smith* v. *Livermore,* 298 Mass. 223, 234; *Salter* v. *Salter,* 338 Mass. 391, 393; Newhall, Settlement of Estates (4th ed.) § 361.

2. We next examine Sarah's will to determine whether any legatees therein named would have taken, as legatees, the 1905 trust property "if . . . Sarah had held the same in her own right at the time of her decease and . . . [the 1905 indenture] had never been made." Article 22, the residuary article, expressly excludes from its operation all the 1905 trust property over which Sarah had a power of appointment. Articles 20, 21, and 23 make partial appointments of the 1905 trust property. No provision purports to make any explicit disposition of the 24/60 interest in the balance of the 1905 trust property remaining after the appointments in arts. 20 and 21.

If Sarah had held the 24/60 of the balance of the 1905 trust property outright at her death, and had made no exclusion of the property from the operation of art. 22, it would have been part of her probate estate and the 24/60 interest would have passed under art. 22. We cannot disregard, however, the words, "specifically excluding any property over which I have a power of appointment" under the 1905 indenture.

The exclusionary words in art. 22 identified the 1905 trust fund as a separate asset, and operated at least to prevent any application of art. 22 to the portions of the trust property in fact appointed under arts. 20 and 21 and to the 36/60 of the balance appointed under art. 23. The exclusionary words were equally appropriate to prevent any application of art. 22 to the unappointed 24/60 interest, which in art. 23 also is carefully excluded from any exercise by that article of the 1905 power of appointment. We conclude that no provision of Sarah's will dealt with the 24/60 interest. It was excluded from the operation of her will by apt language.

We rest our decision upon the language of art. 22, but it is apparent that the exclusion of the 24/60 interest from the operation of Sarah's will was not accidental. It was clearly brought about by the Federal estate tax situation (see footnote 3, *supra*) existing in 1947, which the draftsman of Sarah's will obviously had much in mind. This is shown by the 1947 partial release of the 1905 power of appointment executed immediately after the execution of Sarah's will. That release could have had no reasonable purpose other than the entirely proper avoidance of Federal estate taxes at Sarah's death upon the 24/60 interest. The estate tax situation also adequately explains why the draftsman of Sarah's will carefully avoided any provision in her will which could affirmatively affect the devolution of the 24/60 interest in the 1905 trust fund.

Although the 1947 release recited only the explicit general testamentary power of appointment in the 1905 indenture (see clause [A] already quoted), the release should be construed broadly enough to accomplish its only sensible

purpose, viz., elimination of all possibility that Sarah would thereafter have any control by her will over the devolution of the 24/60 interest which might subject that interest to estate tax. We assume that, at her death in 1958, Sarah had no such power or control. Her will speaks as of the date of her death in the sense (see *Smith* v. *Livermore,* 298 Mass. 223, 232–233) "that it refers to the state of things then existing, but, for purposes of construction, the circumstances known to . . . [her] at the time of its execution are to be considered." See *Boston Safe Deposit & Trust Co.* v. *Lewis,* 317 Mass. 137, 144; Page, Wills (Bowe-Parker Rev.) §§ 30.6, 30.26, 32.8. See also *Cross* v. *Cross,* 324 Mass. 186, 189. The exclusionary words in art. 22 of Sarah's will ("excluding any property over which I have a power of appointment" under the 1905 indenture) were used in 1947 and not in 1958. They appear in a will executed just before she signed the 1947 release. In the context of the 1947 tax situation, we think they were used as excluding entirely from the operation of art. 22 all the 1905 trust property (including the 24/60 interest) and not merely that portion as to which in art. 20, 21, and 23 she exercised her power of appointment.

We are confirmed in our interpretation of art. 22 by the circumstance that Sarah in art. 23 made two alternative appointments (of the 36/60 balance of the 1905 trust fund remaining after the appointments in arts. 20 and 21), one to take effect if her brother, J. Lewis Bremer, should be living at her death and one to be effective if he should not be then living. If the 24/60 interest passed to Sarah's heirs determined at her death under the intestacy laws and not to her residuary legatees, the division of the 1905 trust property between (a) J. Lewis Bremer or members of his family, on the one hand, and (b) the three appellee nieces, on the other hand, would be the same under either alternative appointment in art. 23. If Sarah's residuary legatees are to take the 24/60 interest, the results under the two alternatives differ substantially and illogically.

Some reliance has been placed by the appellees upon *Old Colony Trust Co.* v. *Stetson,* 326 Mass. 641, 643, and

*First Safe Deposit Natl. Bank* v. *Comstock,* 338 Mass. 387, 389–390. In each case, early articles of a will provided a trust fund or funds which, upon a stated event, were to go to legatees named in a later residuary article. In each case, it was held that those named residuary legatees, who survived the testatrix, took each trust remainder as persons in effect named as remaindermen. Here any person, other than Sarah's heirs, in order to take as a remainderman under the 1905 indenture had to be a person "who would have been entitled thereto if . . . Sarah had held the same in her own right at the time of her decease . . . and these presents had never been made." Sarah's will did not dispose of the 24/60 interest, so no legatee of hers, because named in her will, satisfied the description in the ultimate gift.

Sarah's nieces, Edith, Ruth, and Mabel, each take directly as holders of remainder interests under the 1905 indenture (and not through Sarah's estate: see *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 464–467; see also *First Safe Deposit Natl. Bank* v. *Comstock,* 338 Mass. 387, 389–390), one sixth of 24/60 of the balance of the 1905 trust property remaining after giving effect to the appointments in arts. 20 and 21 of Sarah's will. The executor of the will of J. Lewis Bremer takes such a remainder interest in one half of the 24/60 of such balance.

3. The decree is reversed. A new decree is to be entered instructing the trustee of the 1905 indenture in accordance with paragraphs 1, 4, 5, and 6 of the decree hereby reversed, and in other respects as follows: (a) Twenty-four sixtieths of the balance of the principal of the 1905 trust fund, determined as stated in par. 1 of the decree hereby reversed, is to be distributed as passing in default of appointment as follows: one sixth of such 24/60 is to be distributed to each of Sarah's nieces, appellees herein, viz., Edith Faxon, Mabel Baker, and Ruth Baker, each to take directly from the trustee and not through Sarah's probate estate, and one half of such 24/60 is to be distributed directly by the trustee to the executor of the will of J. Lewis Bremer. (b) Sarah did not exercise any power of appoint-

ment over such 24/60 of the balance of the 1905 trust fund remaining after the appointments in arts. 20 and 21 of her will. Costs and expenses of this appeal are to be in the discretion of the Probate Court.

*So ordered.*