DANIEL T. O'CONNELL & another, trustees, *vs.*
CHARLES KIMBALL FROST, individually and
as executor, & another.

Norfolk.    November 7, 1962. — December 4, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Devise and Legacy,* Remainder, Defective expression.

In a will establishing a residuary trust to pay the income to the testator's
widow for life and directing that on her death most of the trust prop-
erty be transferred in equal shares to the testator's brother and his
sister, a woman having no issue and over sixty years of age, or, in the
event of the decease of the brother and the sister, or of either of them,
"prior to my [the testator's] decease," to his or her issue, and that in
the event of the sister's decease without issue "prior to my [the testa-
tor's] decease" her share should go to the brother or his issue, the lan-
guage in the circumstances did not disclose an instance of defective
expression of the testator's manifest general intent but should be given
effect literally just as written and with its usual legal meaning, so that
the brother and the sister, both of whom survived the testator and pre-
deceased his widow, the sister leaving no issue, each took at the testator's
death a vested remainder interest not subject to subsequent divestment.

PETITION for instructions filed in the Probate Court for
the county of Norfolk on December 29, 1960.

The case was heard by *Fox,* J.

*Lenahan O'Connell* stated the case.

*G. K. Richardson* for Mary E. Buck.

*William N. Swift* for Charles Kimball Frost.

CUTTER, J.    The trustees under the will of Walter E.
Frost (Walter) filed a petition in the Probate Court for
instructions.    From a decree on that petition, the respond-
ent Mary E. Buck has appealed.    The case was heard upon
statements of counsel and documentary evidence introduced
before the probate judge.    The evidence is reported.

Walter died June 24, 1928, leaving as his heirs his widow
Agnes, his brother Henry A. Frost, his sister Nellie M.

Merritt, and a nephew William P. Frost. Henry A. Frost died intestate in 1938 leaving as his sole heir a son, the appellee Charles K. Frost. Nellie M. Merritt died in 1943, childless, leaving all her property to her husband, Arthur H. Merritt, who in turn at his death in 1946 left as his sole legatee his sister Mary E. Buck.[1]

Walter, by his will dated January 11, 1928, left the residue of his estate to trustees, to pay the net income to Agnes during her life, with power to expend principal for her support. By art. Eighth, the trustees were directed to distribute the trust estate, after four monetary gifts, as follows: "E. The [r]est . . . then remaining, both principal and accumulations, if any, I give . . . in equal shares to my brother, Henry A. Frost, and to my sister, Nellie M. Merritt; and *in the event of their decease, or either of them, prior to my decease,* then to his or her child or children and the issue of any deceased child by right of representation. *In the event of the decease without issue of my sister Nellie M. Merritt, prior to my decease,* the share intended for her shall revert to my brother, Henry A. or to his issue, in manner described in the first sentence of this paragraph" (emphasis supplied).

Walter's widow, Agnes, died September 10, 1960. The trustees ask instructions, among other things, (a) whether the estates of Nellie M. Merritt and Henry A. Frost have vested interests in the trust fund, and (b) as to the persons entitled to share the trust estate. The decree of the Probate Court stated, among other things, that "there was a vested remainder in . . . Henry A. Frost, and in . . . Nellie M. Merritt, subject to being divested in the event of . . . [her] death without issue" and that "the trust is distributable to the surviving issue of . . . Henry A. Frost."[2]

---

[1] Nellie M. Merritt was born on February 28, 1865. Charles K. Frost was born on August 8, 1899.

[2] We need not consider an instruction given by the Probate Court decree concerning the distribution of $975 of trust principal, which, except for the death of Agnes, would have been paid to her two days thereafter. No party now argues that this instruction given by the Probate Court decree was incorrect.

1. By art. Eighth, E, *supra,* the remainder after Agnes's life interest was given to Henry A. Frost and Nellie M. Merritt, subject, in the case of Henry, to a gift to his issue in the event of his death "prior to my [Walter's] decease," and, in the case of Nellie, (a) to a similar gift to her issue, if any, in the event of her death prior to Walter's death, and (b) in the event of her death "without issue . . . prior to my [Walter's] decease," to a gift of her share to Henry or his issue. When Walter's will became operative at his death in June, 1928, these gifts could take effect in accordance with their exact terms. The provisions, given their ordinary meaning, were not foolish or unreasonable, for it was entirely possible that, between the date of Walter's will (January 11, 1928) and the date of his death (June 24, 1928), his brother or sister would die, so that their respective issue would take the shares at Walter's death. It was certain as a practical matter that Nellie (then sixty-three years old, see fn. 1, *supra*) would die without leaving issue. She had no issue at the date of Walter's will. Her share, if she had died before Walter's death, would then have gone to Henry (or to his issue, if he also should die prior to Walter). There is no language in the will in terms requiring that Henry or Nellie must survive Agnes in order to take remainders after her life estate, if Agnes, Henry, and Nellie all should survive Walter as they all did.[3]

In the circumstances, of course, one is tempted to speculate whether the draftsman of the will has been precise in the use of language (cf. *New England Trust Co.* v. *Faxon,* 343 Mass. 273, 280) and whether he would have achieved a result closer to Walter's actual intention if he had written "prior to the decease of the last survivor of me and my wife" instead of "prior to my decease." This must necessarily be a matter of pure speculation. After Agnes, his wife, his brother, Henry, and his sister, Nellie, were plainly

---

[3] The provisions for gifts to Henry's and Nellie's issue, if Henry and Nellie should die before Walter, in some degree duplicate the "lapse" statute. G. L. c. 191, § 22. Even if the provisions were, in part at least, unnecessary, their literal meaning is not thereby affected. See *Cotter* v. *Cotter,* 293 Mass. 500, 503. See also *Lyons* v. *Lyons,* 313 Mass. 550, 552.

the primary objects of Walter's bounty. If he thought about it all, he may have intended them to have indefeasible, transferable, vested remainder interests in the trust fund, if they severally survived him. Some support for this possibility may be found in the circumstance that the only spendthrift provision affecting the trust estate related only to Agnes's life interest.

This is a proper case for applying the trust provisions just as the testator wrote them, giving to his language its usual legal meaning, without inserting any provisions by implication. We interpret the language of the will literally as giving to Henry and to Nellie each a remainder interest in one half of the trust fund existing at the death of Agnes, vested indefeasibly at Walter's death. We perceive no language of the will sufficient to "manifest an intention that vesting . . . be postponed until the death of" Agnes or that the vested remainder interests of either Henry or Nellie be divested if its owner should not survive Agnes. See *Bamford* v. *Hathaway,* 306 Mass. 160, 161. Cf. *Doggett* v. *New England Trust Co.* 327 Mass. 167, 169–170.

This is not a case where there has been an omission of a disposition needed to prevent an intestacy (cf. *Knowlton* v. *Forbush,* 322 Mass. 703, 704–705; *Balcom* v. *Balcom,* 333 Mass. 599, 600–602) or of explicit language appropriate to carry out the testator's apparent intention as indicated generally in the document. See, e.g., *Goodwin* v. *New England Trust Co.* 321 Mass. 502, 504–506; *Fay* v. *Fay,* 334 Mass. 311, 318–320; *Boston Safe Deposit & Trust Co.* v. *Boston Safe Deposit & Trust Co.* 343 Mass. 695, 698. There has been no palpably inadvertent omission of words. Cf. *Hendrick* v. *Mitchell,* 320 Mass. 155, 159–160. Nothing shows with certainty that the words of art. Eighth, E, were not used with the intention that they be given their usual meaning. See *Whitbeck* v. *Aldrich,* 341 Mass. 326, 329. See also *Mahoney* v. *Grainger,* 283 Mass. 189, 191–192; Page, Wills (Bowe-Parker ed.) § 13.6. In order to carry out a testator's general scheme, we may, of

course, "in appropriate cases . . . imply words apparently omitted from a will." See *Old Colony Trust Co.* v. *Tufts,* 341 Mass. 280, 283. See also *Metcalf* v. *First Parish in Framingham,* 128 Mass. 370, 374; *Loring* v. *Clapp,* 337 Mass. 53, 60–61; Page, Wills, (Bowe-Parker ed.) § 30.25. Here, however, as in the *Tufts* case, 341 Mass. 280, 282–283, "no implication [or rearrangement] of words is necessary, for all the language of the will, as it stands, construed in accordance with usual rules, can be carried out in a manner reaching a reasonable result." See Newhall, Settlement of Estates (4th ed.) § 361. Our conclusion is consistent with decisions in which there may have been more ambiguity in the testamentary language than there is in the will before us. See *Old Colony Trust Co.* v. *Brown,* 287 Mass. 177, 179–181; *Cotter* v. *Cotter,* 293 Mass. 500, 503; *Lyons* v. *Lyons,* 313 Mass. 550, 551–552. See also *Barker* v. *Monks,* 315 Mass. 620, 624.

2. The decree of the Probate Court is reversed. A new decree, consistent with this opinion, is to be entered in the Probate Court (a) instructing the trustees that Henry A. Frost and Nellie M. Merritt at the death of Walter E. Frost each took an indefeasibly vested remainder interest in one half of the balance of the trust fund left after the life interest of Agnes E. Frost; (b) answering the second and third requests for instructions appropriately in the light of the foregoing instruction; (c) providing appropriately for distribution of the balance remaining in the trust fund to the persons or fiduciaries now entitled to take the remainder shares of Henry A. Frost and Nellie M. Merritt, respectively; and (d) stating, as did par. 5 of the original decree, that the sum of $975 (see fn. 2, *supra*) shall remain a part of the trust fund and not become a part of the estate of Agnes E. Frost. Costs and expenses of past and future proceedings in the Probate Court and costs and expenses of this appeal are to be allowed in the discretion of the Probate Court, after consideration of the results of this appeal.

*So ordered.*